# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-3702NI, 99-3740NI

_____

Jeremy Jason Mann,                  *
                                        *

        Appellee/Cross-Appellant,   *
                                        *   On Appeal from the United

     v.                           *   States District Court
                                        *   for the Northern District
                                        *   of Iowa.

John A. Thalacker,               *
                                          *

        Appellant/Cross-Appellee.  *

_____

Submitted:  December 13, 2000

Filed:  April 9, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD and HANSEN, Circuit
     Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

     Jeremy Jason Mann was charged with abducting a seven-year-old girl, sexually abusing her, throwing her into a river, and leaving her to drown. He was convicted at a bench trial of first-degree kidnaping and attempted murder, and received consecutive sentences requiring him to be imprisoned for life plus 25 years. After conviction and sentencing, he learned that the judge who had tried his case had been a victim of

childhood sexual abuse. The judge recused himself from the state post-conviction proceedings (in which his own alleged bias was to be an issue). In his federal habeas petition, Mr. Mann raises several arguments, the most substantial of which are directed to the fairness of his bench trial. He claims that the trial judge could not have been impartial, given the judge's personal history, and that the failure to disclose that history invalidates Mr. Mann's waiver of trial by jury. The District Court granted the writ on these two grounds, rejecting Mr. Mann's other arguments. Both sides appeal. We hold that the writ should be denied.

I.

This case has been going on for a long time, and not all of the facts are relevant to the issues presently before the Court. A brief description of Mr. Mann's offense is necessary. We state the facts in the light most favorable to the state court's judgment. The victim was walking home from elementary school when Mr. Mann pulled up in his truck and made her get in. He drove with her to a secluded spot near the Winnebago River, where he made her undress, molested her, and forced her to perform oral sex on him. When she was dressed again, he threw her into the river, which was then running nearly at flood level. He then drove off to pick up his brother from school. The victim pulled herself to the riverbank by means of rocks and logs and ran to a nearby house for aid. On the basis of her statement to police, Mr. Mann was brought in that night for questioning. At the end of a partly recorded interrogation, Mr. Mann dictated and signed a confession in which he admitted that he had abducted the girl, had forced her to perform sex acts, and had thrown her into the river "to make her scared." Many of the facts recited in the confession were corroborated by the testimony of the victim and of the people to whom she had contemporaneously told her story. In addition, the victim's red backpack, which Mr. Mann mentioned in his confession, was found near the place where she had climbed from the river.

Mr. Mann waived his jury right. According to his statement of waiver, he was informed by counsel that the United States Constitution and the law of Iowa gave him a right to make the state obtain the unanimous vote of a jury in order to convict him. He was told that, if he waived his jury right, trial would be to the Court. At that time, however, he did not know that his case would be tried before a judge who had personal experience with sexual abuse. This information did not come to light until after he had been convicted and sentenced. Between sentencing and the commencement of consolidated appellate and post-conviction proceedings, someone informed Mr. Mann's counsel that the trial judge's father belonged, or had belonged, to a counseling group that dealt with child sex abuse. Mr. Mann's counsel wrote a confidential, *ex parte* letter to the judge, asking whether the information he had received contained any truth, and requesting that, if so, he should be allowed to make a record on issues arising from the belated disclosure.

The judge was deposed, and the transcript of that deposition was sealed. Our purposes do not require us to reveal the contents of that sealed record beyond what has already appeared in other public records in this case. The judge, in his early teens, had been subjected to coercive but not forcible sexual abuse by his father. The abuse had not involved penetration of any kind. The judge said he had no lasting scars from the experience that would interfere with his ability to decide sex-offense cases fairly. With respect to Mr. Mann's case in particular, he said that his own personal experience with sex abuse had not crossed his mind during his early involvement with the case, i.e., prior to his sitting as trier of fact, and that he had felt no bias or prejudice against Mr. Mann. Although the judge did admit that he still had ill feelings about the abuse he had experienced, he said that those feelings were directed entirely towards his father.

In his direct appeal and state post-conviction proceedings, Mr. Mann raised the arguments he urges here: that he was deprived of an impartial fact-finder, that he waived jury trial unknowingly, that his trial counsel was ineffective, and that the introduction of hearsay evidence against him violated the Confrontation Clause. All

these arguments were rejected on the merits. The Iowa Supreme Court also held that the trial judge did not violate the Iowa judicial canons in deciding not to recuse himself from Mr. Mann's case. Mr. Mann then went to federal district court. What happened there has already been mentioned.

## II.

The federal habeas petition in this case was filed in 1995. This means that our decision is governed by the standards of review that existed prior to enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). We review *de novo* the District Court's legal conclusions; its factual findings are disturbed only if clearly erroneous. Brown v. Caspari, 186 F.3d 1011, 1014 (8th Cir. 1999). The state courts' factual determinations receive a presumption of correctness. Id.

We first consider whether the trial judge's failure to recuse himself was an error of constitutional dimensions. Both the Iowa Supreme Court and the District Court appear to have adjudicated this issue under the Iowa recusal statute, which closely resembles the federal disqualification rule codified at 28 U.S.C. § 455. Relying in part on the federal case law interpreting § 455, the Supreme Court of Iowa held that the Iowa statute did not require recusal on the facts presented here. The District Court disagreed, believing that the federal cases would require disqualification in such a case.

We take a different tack. It is clear that § 455 was not binding on the state judge who tried Mr. Mann's case. See 28 U.S.C. § 455(a) (statute applies to "[a]ny justice, judge or magistrate of the United States . . ..”). Whether that judge had a statutorily imposed obligation to recuse himself is a point of Iowa law, and the Iowa Supreme Court's negative answer disposes of the question. It makes no difference that the state statute tracks the federal one, or that the state Court relied on federal cases as aids to interpretation.

That is not the end of the matter, however. Mr. Mann's claim arises not under a statute but under the Fourteenth Amendment. In evaluating such a claim, it is not enough to know that Iowa law did not mandate recusal, although the State's judgment on that issue deserves some weight as a guide to what is reasonable. And even if the judge had violated state judicial canons in failing to recuse himself, it would not automatically follow that the trial he conducted fell short of due process.[1] See Dyas v. Lockhart, 705 F.3d 993, 996 n.1 (8th Cir.), cert. denied, 464 U.S. 982 (1983). The issue remains whether Mr. Mann was deprived of his federal constitutional right to be tried before an impartial finder of fact.

Our review of the record does not reveal any statements or actions on the part of the trial judge that reasonably indicate actual bias. The fact that Mr. Mann received consecutive sentences is not sufficient: the crimes of which he was convicted would shock and anger any normal person, and an unbiased judge might well find such a penalty justified. Nor are we persuaded that the trial judge intentionally concealed his past from Mr. Mann. Mr. Mann points out that the judge claimed it did not occur to him to disclose his own abuse because it was a "dead issue" in his life, but later stated that he would be terminating his yearly holiday visits to his parents "this year." The District Court agreed that these two statements did not "jibe." If there is an inconsistency between them, however, it is not such as to support an inference of intentional concealment. The fact that the judge's family relations are still affected by his father's offenses may raise doubts about whether the abuse is fully a "dead issue" for him. But the Constitution does not require that it be a "dead issue." What the Constitution requires is impartiality, and we see no reason to conclude that this judge failed to provide it.

---

[1]For analogous reasons, we reject Mr. Mann's suggestion that the Constitution requires a judge to recuse himself whenever a juror, under similar circumstances, could be successfully challenged for cause under the Iowa Rules of Criminal Procedure.

Mr. Mann argues, however, that the judge's personal circumstances here make bias so likely that it should be presumed. The first Dyas v. Lockhart panel described the applicable constitutional standard:

> The test in determining if a judge's bias should be presumed in a particular case is whether, realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. [Citations omitted.] In making this inquiry, we of course presume the honesty and integrity of those serving as judges.[2]

705 F.2d at 996-97. We acknowledge that childhood sexual abuse often has lasting psychological effects. We have no reason to believe that a person would be immune from those effects simply because he or she grows up to be a judge, rather than an accountant or a taxi driver. After consideration, however, we think it is not generally true that a judge who was a victim of sexual abuse at some time in the remote past would therefore probably be unable to give a fair trial to anyone accused of a sex crime.

The argument for presuming bias in Mr. Mann's case would be stronger if the abuse the judge suffered as a child bore a closer resemblance to the conduct with which

---

[2]Mr. Mann cites In re Murchison, 341 U.S. 133, 136 (1955), and Tumey v. Ohio, 275 U.S. 510 (1927), for the proposition that a judge is constitutionally required to recuse himself whenever circumstances create even the appearance of partiality. Those cases do not support so broad a rule. In neither Murchison nor Tumey did the Court infer bias from the personal history of the judge. In Murchison, the same judge served first as a one-person grand jury and then as a fact-finder at trial. In Tumey, the person responsible for adjudicating certain offenses received a percentage of the fine imposed in each case. Thus, both cases dealt with state procedures that gave judicial decision-makers an incentive to disregard the presumption of innocence. There is no such structural problem here.

Mr. Mann was charged. The two cases are quite different, however. Mr. Mann committed his offense against a stranger, a girl, seven years old. The abuse in the judge's case was perpetrated by a father against his eleven- to fourteen-year-old son. Mr. Mann's offense involved kidnaping, physical force, and sexual penetration; the judge's father's offense involved none of these. Mr. Mann also attempted to kill his victim, which the judge's father did not do. The similarities between the two events amount roughly to the fact of sexual contact inflicted by a man upon a child. That is not enough to support a presumption of bias, especially given that approximately two decades' worth of other experiences stood as a buffer between the judge's childhood trauma and his involvement with Mr. Mann's trial. These considerations also further weaken any inference of actual partiality that might be drawn from the judge's failure to disclose his personal history.

III.

Mr. Mann next argues that, even if recusal was not required, it was impossible for him to make a knowing waiver of his jury right without being informed of the judge's background. We disagree. We have held that "[t]he purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." O'Rourke v. Endell, 153 F.3d 560, 567-68 (8th Cir. 1998). The weight of judicial opinion favors the view that the "significance and consequences" in question are purely legal and do not include personal information about the judge. See United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983) (holding that information about a judge's predilections or personal circumstances irrelevant to the question of whether a defendant's waiver of jury was knowing and voluntary; citing cases); United States v. Duarte-Higareda, 113 F.3d 1000, 1002 (9th Cir. 1997) ("The district court should inform the defendant that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant

waives a jury trial."); cf. Fed R. Crim. P. 11(c) (describing kind of advice that must be given to a defendant in order to ensure that a guilty plea is intelligently entered). We agree with this distinction and hold that Mr. Mann's waiver of jury was sufficiently informed, notwithstanding that he did not know about the judge's personal experience with sexual abuse.

We are aware that information of the kind at issue here is the sort of thing a lawyer advising a client would like to know. But there might be many personal facts about a judge from which lawyers would try to derive some tactical advantage, and not all such facts are subject to disclosure. It would not be good for the administration of justice if they were: indeed, we doubt that many judges would take the bench if they knew that all their unpleasant memories would be regularly dug up and examined in court. Disclosure would also multiply proceedings, as it did in this case, and the additional proceedings would occupy the energies of two judges: one to testify, and one to find facts and render a decision. These proceedings would be highly repetitive from case to case, and would detract from the speedy administration of justice. Moreover, it is not even clear that a broad disclosure rule would be good for the lawyers and clients who would invoke it. The tactical importance of facts about a judge's personal background is not always evident: for example, Justice Hugo Black, a former Klansman, played an important role in developing the civil rights jurisprudence of the Warren Court. In any event, whether or not such a rule would be good, we know of no constitutional authority for it. Judges are trained to lay aside personal opinions and experiences when they sit in judgment, and we are not persuaded that this judge failed in that duty.

Mr. Mann's reliance on the second panel's holding in Dyas v. Lockhart, 771 F.2d 1144, 1147-48 (8th Cir. 1985), is misplaced. The question there was whether the defendant had knowingly waived any objection to having his jury trial conducted by a judge who had a family relationship with a prosecuting attorney. We held that Dyas's failure to object before trial did not constitute a knowing waiver of the issue. He

-8-

learned of the relationship for the first time during the concluding moments of his trial. We do not believe that Dyas controls in the present situation. A present family relationship with a lawyer actually appearing before the judge naturally creates an inference of bias, at least in the minds of some. Judges' personal histories are in a different category, we think. If personal histories and experiences, even remote ones, are to be inquired into, it would be difficult to know where to draw the line. Wherever that line would be, we are persuaded that the present case falls on the safe side of it.

IV.

The District Court rejected Mr. Mann's claim of ineffective assistance of counsel. We review that Court's findings of fact for clear error, and its conclusions of law *de novo.* Tokar v. Bowersox, 198 F.3d 1039, 1045-46 (8th Cir. 1999). Mr. Mann argues that his trial counsel performed deficiently in three ways: in failing to present exculpatory evidence, in failing to present either of two theories of innocence, and in failing to move for suppression of the victim's in-court and out-of-court identifications of Mr. Mann as her kidnaper. We affirm the District Court's judgment as to these arguments.

The evidence that Mr. Mann claims is exculpatory relates to the timing of the offense. Mr. Mann first argues that his trial attorney should have called one of the State's witnesses to testify that, just before 3:00 p.m. on the date of the offense, she saw a truck matching the description of his near where the victim was picked up. Mr. Mann contends that this testimony would have tended to show that someone else, in a truck like his, committed the offense. We find this contention implausible. According to the statement of a co-worker, Mr. Mann was leaving work at "approximately 3:00 p.m." when he was asked to do a chore that took him "less than five minutes." The victim was abducted while on her way home from school. A police officer stopped Mr. Mann for a traffic offense at around 3:30 p.m. The witness's testimony, therefore, would likely have been perceived as helping to widen the window of time in which Mr. Mann

could have committed the kidnaping. The District Court found that defense counsel's decision not to call her was one of trial strategy. Considered as such, it was reasonable. Mr. Mann also argues that competent trial counsel would have pursued the theory that it was impossible for him to have committed the offense. The District Court found that counsel's failure to pursue this theory was based on the professional judgment that it would fail. Given the inconclusive nature of the time evidence, we cannot say that this trial-strategy decision was incompetent.

Mr. Mann also argues that trial counsel performed ineffectively in failing to present either of two theories of innocence: that no crime occurred – i.e., that "the girl lied" – or that someone else committed the crime. We agree with the District Court that, in light of the evidence at trial, neither of these theories would have had much chance of success. We need not discuss this argument further.

The final respect in which Mr. Mann claims his trial lawyer performed ineffectively is in failing to move to suppress evidence of identification. The District Court correctly considered the factors set forth in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), finding as follows:

> The victim had plenty of time to view her assailant in broad daylight . . .. The victim's degree of attention was high, as she "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." Biggers, 409 U.S. at 200. The victim gave a surprisingly accurate description of Mann to the police officers who questioned her almost immediately after the crime occurred. Further, the victim was given a "mug-book" four or five pages deep containing at least one hundred photographs. When she came to the photograph of Mann, she pointed to the photograph and said, "That's him." Finally, the length of time between the kidnaping and the victim's identification of Mann was just one day.

-10-

Appellant's App. 853-54. We conclude that the identification procedure here was not unduly suggestive and did not create a very substantial likelihood of irreparable misidentification. See Manson v. Brathwaite, 432 U.S. 98, 116 (1977). The minor inaccuracies Mr. Mann points out in the victim's statements are relevant to the weight of the evidence, not to its admissibility. See Dodd v. Nix, 48 F.3d 1071, 1074-75 (8th Cir. 1995) (kidnaping victim described assailant as having a "pushed-in chin" and a blue car, whereas defendant had a pronounced chin, a goatee, a brown car, and tattoos that the victim had failed to mention; Court held that the description was otherwise largely accurate, and inaccuracies were for the trier of fact to weigh); cf. Graham v. Solem, 728 F.2d 1533, 1544 (8th Cir.) (en banc) (inconsistencies in rape victim's description of her attackers did not indicate a substantial likelihood of misidentification but merely raised a question of credibility for the state court to resolve), cert. denied, 469 U.S. 842 (1984).

We see little likelihood that the outcome of Mr. Mann's trial would have been different if his trial counsel had taken any or all of the actions he now suggests. Accordingly, we reject his cross-appeal as to ineffective assistance of counsel.

V.

Mr. Mann also challenges the voluntariness of his confession. He claims that, after having been read his Miranda rights and executed a written waiver, he asserted his right to silence when he told the interrogating officer, "I just have to keep to myself." This remark occurred in the context of a brief digression about Mann's unwillingness to make eye contact with the officer. Before the digression, they were discussing Mann's reclusive habits. The remark most likely refers to one of these subjects. At any rate, we see no reason to construe it as an invocation of Miranda rights. Being evasive and reluctant to talk is different from invoking one's right to remain silent. Moreover, we are not persuaded that Mr. Mann was coerced into dictating and signing a detailed confession simply because he was interrogated on little

sleep by an officer who used some leading questions and sometimes prodded him to be more forthcoming. We have read the transcript of the interrogation and see no evidence of the kind of intimidation or manipulation that might make someone confess to a serious violent crime he did not commit. The District Court's rejection of Mr. Mann's Fifth Amendment argument is affirmed.

The final argument Mr. Mann raises on cross-appeal is that his Sixth Amendment right to confront the witnesses against him was violated when a police officer was allowed to testify that the victim had confidently pointed to Mann's photograph in the mug-shot book, saying, "That's him." We agree that this statement was hearsay if offered to prove the identity of the kidnaper. The introduction of hearsay evidence against a criminal defendant does not always violate the Confrontation Clause, however. The constitutional requirement is met if the evidence either falls within a firmly rooted exception to the hearsay rule or is supported by particular facts that independently demonstrate its reliability. Olesen v. Class, 164 F.3d 1096, 1098 (8th Cir. 1999). A Confrontation Clause objection may also be overcome if the hearsay declarant testifies at trial and is available for cross-examination. On facts similar to those of the present case, we have said that "the Confrontation Clause is generally satisfied when the child victims whose hearsay statements have been admitted actually appear in court and testify in person." Id. In this case, the victim testified at Mr. Mann's trial and identified him in court. She also testified to having seen her kidnaper's photograph in a binder at the police station on the day of the offense. Her availability for cross-examination on these points brings the officer's hearsay testimony within any limit set by the Confrontation Clause.

## VI.

The State prevails on its appeal. As far as we can see, Mr. Mann received a fair trial before an unbiased finder of fact. We refuse to presume bias on the basis of the judge's remote experience with sexual abuse. Nor do we accept that the judge's failure

to disclose that experience deprived Mr. Mann of any information constitutionally required in order to waive his jury right.  The arguments Mr. Mann raises on cross-appeal lack merit, for the reasons given above.

The judgment of the District Court, granting the writ of habeas corpus, is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.