[Civ. No. 22123. Fourth Dist., Div. One. July 30, 1980.]

TODD FIGI et al., Plaintiffs and Appellants, v.
NEW HAMPSHIRE INSURANCE COMPANY,
Defendant and Respondent.

774

COUNSEL

Popko & Cornblum and Bruce Cornblum for Plaintiffs and Appellants.

Rhoades & Hollywood, Harrison R. Hollywood and Bruce E. Sulzner for Defendant and Respondent.

OPINION

**COLOGNE, Acting P. J.**—Todd Figi appeals the judgment confirming arbitrators' award on the ground undisclosed business relationships between the neutral arbitrator, the insurance company arbitrator and the respondent insurance company—New Hampshire Insurance Company (New Hampshire)—give the appearance of bias and furnish grounds to vacate the award for fraud and corruption (Code Civ. Proc., § 1286.2, subd. (a)).

Figi sustained a fire loss insured by New Hampshire and the matter was submitted to arbitration. Both Figi and New Hampshire selected as their arbitrators independent insurance adjusters: Gary G. McKay, who normally represents claimants, for Figi; and Dick Walsh, who generally works for insurance companies, for New Hampshire. McKay and Walsh selected the neutral arbitrator, Milton Stern, a certified public accountant regarded by both Walsh and McKay as the only available competent umpire for this dispute. Stern initially resisted appointment because of a longstanding personal friendship with Figi's arbitrator, McKay, but McKay and Walsh persuaded him to serve. The arbitration hearing took place May 30, 1978, resulting in an award of $11,929. Figi thought it should be about $40,000. Shortly afterward, McKay demanded disclosure of alleged relationships between Stern and Walsh. It

was determined between March 29 or March 30, 1978, when Stern agreed to act as neutral arbitrator, and the time of the award on June 7, Stern worked as an accountant for Walsh, determining business interruption losses on five matters, none involving New Hampshire, for a total of approximately $847.15 in fees, paid by the insurance companies involved, at the direction of Walsh. Stern normally does this type of work for insurance company adjusters. There was no showing of what part of his total income for the period is represented by these fees. It was further asserted Walsh, as an independent adjuster, handles a "good share" of the business of New Hampshire in San Diego. Again, the precise quantity represented by that "good share" is not established. There was no showing any of the matters Stern worked on for Walsh involved New Hampshire. Further, all three arbitrators were well acquainted and had worked together previously, and as stated, McKay and Stern were personal friends as well.

New Hampshire contends Figi's lateness in noticing its motion to vacate was a waiver of its right to object; there is evidence supporting an inference Figi knew of the relationships and waived objection; and substantial record evidence warrants the trial court's finding the relationships were not sufficiently important to require disclosure. The trial court denied the motion to vacate and confirmed the arbitration award without making specific findings. The judgment recited there are no factual allegations of wrongdoing; the award is fair, just and reasonable; and "no appearance of corruption or fraud exists."

Figi first refused to accept the arbitration award on June 14, 1978; he filed his petition to vacate the award on August 10, 1978, which was timely; but he then waited eight months, until April 12, 1979, to notice the motion to vacate.

In general, significant or substantial business relationships between the neutral arbitrator and a party or his representative must be disclosed to the other party, to avoid the appearance of impropriety, but ordinary and insubstantial business dealings do not necessarily require disclosure. (*Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 369 et seq. [133 Cal.Rptr. 775, 84 A.L.R.3d 343]; *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64 [148 Cal.Rptr. 282]; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567-568 [104 Cal.Rptr.

733]; *Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 842-843 [86 Cal.Rptr. 133].) Whether a particular relationship requires disclosure is a factual question to be determined by the trier of fact in each case (*San Luis Obispo Bay Properties, Inc., supra,* 28 Cal.App.3d 556, 568). Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field, but they should disclose any repeated or significant contacts which they may have with a party to the dispute, his attorney or his chosen arbitrator. (See discussion in *Commonwealth Corp., supra,* requiring disclosure where the neutral arbitrator, an engineering consultant, had been hired repeatedly by one of the disputants and had rendered services on the very project involved in the controversy.) The court in *Commonwealth Corp.* required not severance from the business world, but disclosure. (*Commonwealth Corp. v. Casualty Co., supra,* 393 U.S. 145, 148-149 [21 L.Ed.2d 301, 304, 305], cited and applied in *Johnston v. Security Ins. Co., supra,* 6 Cal. App.3d at p. 842.)

▮ Arbitration under insurance policies is governed not only by the general provisions of the Code of Civil Procedure relating to arbitration and the cases under these statutes discussed above, but also by specific provisions of the Insurance Code and particular judicial doctrines applicable to the insurance contract. First, Insurance Code sections 2070 and 2071 mandate a standard form of fire insurance policy which, under section 2071, must contain, among other things, a standard appraisal clause which provides if the insured and the company disagree as to the actual cash value of a loss, then each shall select a "competent and disinterested" appraiser and the two selected appraisers then choose a third such appraiser. These appraisers must then evaluate the loss. The specific requirement appraisers be "disinterested" is not a requirement for arbitrators generally in other areas of law (see, e.g., *Tipton v. Systron Donner Corp.* (1979) 99 Cal.App.3d 501 [160 Cal.Rptr. 303]).

In addition to requiring the selection of disinterested appraisers, the law in general holds insurance companies to the duty of good faith and fair dealing towards the insured, which duty specifically includes conduct of the insurance company during an appraisal procedure (see *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 54 [147 Cal. Rptr. 565]). Wrongful conduct in the course of arbitration procedures is a breach of the insurance company's duty to its insured (*Corral v. State Farm Mutual Auto Ins. Co.* (1979) 92 Cal.App.3d 1004 [155

Cal.Rptr. 342]), hence could also furnish grounds to vacate an appraisal award under Code of Civil Procedure section 1286.2, subdivision (a), stating arbitration awards may be vacated if "procured by corruption, fraud or other undue means." This statute applies to appraisals as to other arbitration awards (see Code Civ. Proc., § 1280, subd. (a)).

New Hampshire has argued the appraisal function is more limited than that of an arbitrator, i.e., he only evaluates the loss and does not consider questions of policy, interpretation or scope of coverage. (E.g., *Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880]; *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239 [18 Cal.Rptr. 650].) Nevertheless, New Hampshire does not dispute the duty the insurance company has generally to its insured in the conduct of appraisal procedures. We believe that duty, coupled with the statutory mandate the appraiser be disinterested, compels the conclusion that despite the appraiser's more limited function in these cases involving an insurance contract, he is held to a higher standard of impartiality than are arbitrators generally.

Both parties agree appraisers are not agents of the parties nor subject to their direction and control, a fact crucial to a disinterested status (see *Hyland* v. *Millers Nat. Ins. Co.* (N.D.Cal. 1932) 58 F.2d 1003, affd. (9th Cir. 1937) 91 F.2d 735, rehg. den. (9th Cir. 1937) 92 F.2d 462).

Mindful of the difficulty of securing competent appraisers who have never done business with the insurance company involved, we are hesitant to decide, and need not here conclude, that an appraiser is necessarily "interested" in violation of the statute because he has done business with the insurance company in the past. Here, there is no precise showing of the quantum of business between Walsh and New Hampshire nor that any of this business was done during the appraisal procedure. Accordingly, the relationship between Walsh and New Hampshire would not as a matter of law on this record form a basis to vacate the award. ■ However, the record does disclose Stern, the "neutral" appraiser, did business with Walsh while the appraisal procedure was pending. There is no showing how significant that business was nor that it involved New Hampshire. Nevertheless, in light of the undisputed facts, Stern cannot be described as "disinterested" when he has done business with the insurance company's appraiser during the pendency of an appraisal involving that company. None of the arbitra-

tion cases which we have examined and cited above approved arbitration awards where there was current business going on between the neutral arbitrators and the nonneutral arbitrators or their appointers. Further, as stated, the standard of disinterest is higher in the context of insurance appraisal than otherwise. Thus, regardless of its significance, the business done between Stern and Walsh rendered Stern "interested" as a matter of law and furnishes a basis for vacating the award under Insurance Code section 2071 and Code of Civil Procedure section 1286.2 read together. The issue is not, as New Hampshire contends, whether there is any evidence of wrongdoing by New Hampshire, for of course there is none, but rather, whether the appearance is one of impartial justice having been done. That image is not reflected by the facts here.

If McKay, the appraiser for Figi, had disclosed to Figi the business done between Stern and Walsh, then perhaps Figi could have waived his right to have a disinterested appraiser. The record does not show, however, any communication of these facts to Figi, nor did the trial court so find. McKay is not Figi's agent such that this knowledge is automatically imputed to Figi. Proof of disclosure is absolutely required before Figi loses his right to challenge the award. Here, there is none.

The trial court's finding the award is proper cannot stand. The judgment must be reversed.

The judgment is reversed and the case is remanded for further proceedings consistent with the principles expressed in this opinion.

Staniforth, J., and Wiener, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 1, 1980.