[No. C003543. Third Dist., Oct. 31, 1988.]

MALKIAT S. BANWAIT, Plaintiff and Respondent, v.
JESUS MARTINEZ HERNANDEZ et al., Defendants;
CALIFORNIA STATE AUTOMOBILE ASSOCIATION, INTER-
INSURANCE BUREAU, Movant and Appellant.

**COUNSEL**

Rich, Fuidge, Morris & Sanbrook, and Roland K. Iverson, Jr., for Movant and Appellant.

Trezza, Ithurburn & Steidlmayer and Mark G. Steidlmayer for Plaintiff and Respondent.

**OPINION**

**SIMS, J.—** ▆▆▆ In this case we hold that an attorney who was appointed a neutral arbitrator under section 1281.6 of the Code of Civil Procedure

did not have to disclose that he had been represented as a client by the law firm representing one of the parties to the arbitration (though not by the attorney conducting the arbitration), where the representation had concluded at least seven months before the arbitration and had involved less than four hours of the firm's time and fees of less than $400. (All further statutory references are to the Code of Civil Procedure unless otherwise noted.)

## PROCEDURAL BACKGROUND

In 1986, plaintiff Malkiat Banwait was insured by a policy of automobile insurance issued by movant California State Automobile Association, Inter-Insurance Bureau (CSAA). Injured in an automobile accident by an uninsured motorist and dissatisfied with CSAA's resolution of his claim, Banwait commenced arbitration proceedings as required by his insurance policy and by section 11580.2, subdivision (f) of the Insurance Code.

In March 1987, pursuant to section 1281.6,[1] Banwait petitioned the court for appointment of a neutral arbitrator after he and CSAA were unable to agree.[2] At a hearing on the appointment, Banwait's counsel proposed three local attorneys to serve as arbitrator. One was Donald E. Huckins. The court appointed Huckins.

Huckins heard the arbitration and made an award in Banwait's favor.

Dissatisfied with the award, Banwait petitioned the superior court to vacate the award on grounds of bias of the arbitrator. Banwait claimed Huckins's conduct during the arbitration hearing evinced a bias in favor of CSAA. Banwait also claimed Huckins improperly failed to disclose both that a partner in the CSAA's law firm was a good friend of his and that he had hired that law firm to defend him in a lawsuit in the year before the arbitration.

CSAA denied any actual bias or prejudice on Huckins's part and moved to confirm the award. By declaration under penalty of perjury, CSAA's law firm showed a partner in the firm (but not the one handling the arbitration) had charged Huckins for 3.91 hours of legal services (representing less than $400 in fees) in the five years preceding the arbitration.[3] That representation

---

[1] This section authorizes a petition to the superior court for appointment of an arbitrator. It also describes the procedures for the court to follow after receiving such a petition. Neither party here disputes its application.

[2] It appears that Banwait filed his petition in his pending tort action against defendant Hernandez. It further appears that subsequent petitions to set aside or confirm the arbitration award were also filed in the tort action. Neither party has challenged the pursuit of these remedies in the pending tort action and we express no view as to their propriety.

[3] No competent evidence showed that Huckins received any free legal services.

had ended in July 1986. CSAA argued these minimal services did not constitute a business relationship substantial enough to compel vacation of the award. Finally, CSAA asserted Banwait had waived any claim of possible bias by his failure to raise the question of bias directly to the arbitrator.

After a hearing, the trial court vacated the arbitration award. The court specifically found "that the arbitrator's award was not one that was procured by either corruption or by fraud or by other undue means" and that the arbitrator "in fact, functioned as a neutral and unbiased arbitrator in this matter."

The court further found that Huckins's friendship with a senior partner of CSAA's law firm was well known to Banwait's counsel before the commencement of arbitration, so that failure to disclose this known relationship was not a ground upon which to set aside the award.

The court further found that Huckins's representation by CSAA's law firm, within the year preceding the commencement of the arbitration, did not "constitute [a] 'substantial business relationship.'" Nevertheless, the court concluded that, "Notwithstanding the foregoing, that does constitute, under [section] 602, a basis for disqualification of [the] trier of fact." Subdivision (4) of section 602 authorizes disqualification of prospective *jurors* who "hav[e] stood within one year previous to the filing of the complaint in the action in the relation of attorney and client with either party or with the attorney for either party."

CSAA has appealed from the order vacating the arbitration award. (§ 1294, subd. (c).) ■■■ CSAA challenges the trial court's application of the juror disqualification statute in a proceeding to vacate an arbitration. CSAA also argues that the trial court's findings on the lack of a substantial business relationship between the arbitrator and appellant's defense counsel preclude vacation of the award. We agree with both of CSAA's contentions and shall reverse the judgment (order).

### DISCUSSION

■■■ The stream of California law respecting the duty of an arbitrator to disclose conflicts of interest has its headwaters in a case decided by the United States Supreme Court, *Coatings Corp.* v. *Casualty Co.* (*Commonwealth Coatings Corp.*) (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337]. There, two private parties had arbitrated a dispute governed by the United States Arbitration Act (9 U.S.C. § 1 et seq.).[4] A supposedly neutral arbitra-

---

[4] Neither party contends the federal act applies here.

tor had failed to disclose he had served as a consultant to one of the parties to the arbitration. Although the arbitrator had not performed services for about a year preceding the arbitration, the arbitrator's "patronage was repeated and significant, involving fees of about $12,000 over a period of four or five years, and the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit." (*Id.,* 393 U.S. at p. 146 [21 L.Ed.2d at p. 303].)

The Supreme Court concluded the failure of the neutral arbitrator to disclose his business relationship compelled vacation of the award under section 10 of the federal act on the ground the award was " 'procured by corruption, fraud, or undue means' or '[w]here there was evident partiality . . . in the arbitrators.' " (*Id.,* 393 U.S. at p. 147 [21 L.Ed.2d at p. 304].) The court concluded it was immaterial that the "neutral" arbitrator was not actually guilty of fraud or bias. (*Ibid.*) The court reasoned that ". . . we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (*Id.,* 393 U.S. at p. 149 [21 L.Ed.2d at p. 305].) Noting that judges should disqualify themselves where there is the slightest pecuniary interest on the part of the judge,[5] the court concluded that the failure of the neutral arbitrator to disclose his business relationship with one of the parties required vacation of the arbitration award. (*Id.,* 393 U.S. at p. 148 [21 L.Ed.2d at p. 304].)

Finally, the court concluded that it was not the purpose of Congress "to authorize litigants to submit their cases and controversies to arbitration boards that might *reasonably* be thought biased against one litigant and favorable to another." (*Id.,* 393 U.S. at p. 150 [21 L.Ed.2d at p. 305], italics added.)

---

[5] The *Commonwealth Coatings Corp.* opinion relies upon *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243] for this proposition, remarking that "this is a *constitutional* principle." (*Id.,* 393 U.S. at p. 148 [21 L.Ed.2d at p. 304] italics in original.) In *Aetna Life Insurance Co.* v. *Lavoie* (1986) 475 U.S. 813 [89 L.Ed.2d 823, 106 S.Ct. 1580] the court expressly disapproved the *Commonwealth Coatings Corp.* dictum suggesting that " 'the slightest pecuniary interest' " test was required by constitutional principles of due process of law. (*Aetna Life Insurance Co., supra,* 475 U.S. at p. 825, fn. 3 [89 L.Ed.2d at p. 835].) Rather, the *Aetna* court approved the rule of *Ward* v. *Monroeville* (1972) 409 U.S. 57, 60 [34 L.Ed.2d 267, 270, 93 S.Ct. 80] holding that due process requires disqualification only where a judge's interest is direct, personal, substantial, and pecuniary. (*Ibid.*) We do not see how *Aetna Life's* deconstitutionalization of the *Commonwealth Coatings Corp.* rule would diminish the significance of the rule as applied to the statutory construction of the Federal Arbitration Act.

In California, section 1286.2 sets forth the grounds for vacating an arbitration award.[6] (See, e.g., *Communications Workers* v. *General Telephone Co.* (1981) 127 Cal.App.3d 82, 87 [179 Cal.Rptr. 204]; *Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-452 [157 Cal.Rptr. 167].) Noting the similarity in the language of the Federal Arbitration Act and subdivisions (a) and (b) of section 1286.2 (see fn. 6, *ante*), the court in *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839 [86 Cal.Rptr. 133] concluded that the rule of *Commonwealth Coatings Corp.* would be applied to construe the California statute. (Pp. 841-842.)

In *Johnston* an insurance company obtained the vacation of an arbitration award in the trial court and the insureds appealed. A supposedly disinterested arbitrator had failed to disclose that (1) he was acquainted with the insureds' counsel and (2) he and an appraiser/witness in the arbitration had been associated on various cases and, at the time of the arbitration hearing, the appraiser/witness was apparently working on a case referred by the arbitrator. (6 Cal.App.3d at p. 843.)

The *Johnston* court concluded the disinterested arbitrator should have disclosed his acquaintanceship with claimant's counsel and his past and prospective business dealings with the appraiser/witness. (6 Cal.App.3d at p. 843.) Said the court, "The fact that no actual fraud or bias was charged or proved against the neutral umpire is immaterial." (*Ibid.*)

Since *Johnston,* California appellate cases have uniformly agreed that the rule of *Commonwealth Coatings Corp.* should govern application of subdivisions (a) and (b) of section 1286.2. (See *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567 [104 Cal.Rptr. 733]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 371-372 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]; *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64 [148 Cal.Rptr. 282]; *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 775 [166 Cal.Rptr. 774]; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087 [213 Cal.Rptr. 62].) However, as we shall see, the application of the rule has not always required vacation of an arbitration award.

---

[6] Section 1286.2 states in pertinent part: ". . . the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

Thus, in *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co., supra,* 28 Cal.App.3d 556, an appraiser/arbitrator and an appraiser/witness in the arbitration "referred cases to each other, but only once or twice per year, and never for any kind of consideration." (P. 567.) Concluding an arbitration award need not be vacated for failure of the arbitrator to disclose the relationship, the court noted the record contained no showing that the two appraisers did anything more than refer their overflow cases to other appraisers so that "[T]here is no indication of any favoritism or unusual preference here . . . ." (*Id.,* at p. 568.) The court remarked, "If the impression of possible bias rule is not to emasculate the policy of the law in favor of the finality of arbitration, the impression must be a reasonable one. [Citations.] In the final analysis, each case must depend on its own facts [citation]." (*Ibid.*)

In *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, after having been named as arbitrator, a physician/arbitrator failed to disclose that he served as an expert witness for the law firm representing one of the parties to the arbitration. (*Id.,* at p. 370.) The physician actually testified in a court case on behalf of the firm while the arbitration hearings were going on. (*Ibid.*) The court concluded the physician's failure to reveal his relationship with the law firm required vacation of the arbitration award. (*Id.,* at p. 372.)

In *Gonzales* v. *Interinsurance Exchange, supra,* 84 Cal.App.3d 58, an attorney/arbitrator had failed to disclose that he had known the senior partner of one of the law firms of record in an arbitration for a period of 40 years; that the senior partner had courted and dated the arbitrator's sister-in-law for many years; and that the senior partner and arbitrator were good friends.

The *Gonzales* court held the failure to disclose these matters did not require vacation of the award. The court read *Johnston* v. *Security Ins. Co., supra,* 6 Cal.App.3d 839 as requiring vacation based upon the existence of an acquaintanceship involving *a substantial business relationship.* (*Gonzales, supra,* 84 Cal.App.3d at p. 64.) Following, *San Luis Obispo Bay Properties, Inc., supra,* 28 Cal.App.3d at page 568, the court held that disclosure is necessary only where the circumstances create a *reasonable* impression of possible bias. (*Gonzales, supra,* at 84 Cal.App.3d p. 66.) Finally, the court concluded, "It is not unusual in this day and age for attorneys practicing law in the same community to be friendly acquaintances. Absent more, such does not not create [an] 'impression of possible bias' . . . ." (*Id., supra,* at pp. 64-65.)

In *Figi* v. *New Hampshire Ins. Co., supra,* 108 Cal.App.3d 772, a fire loss was submitted to arbitration by three arbitrators: two professional appraisers (each selected by a party) who then picked a third "neutral" arbitrator,

a certified public accountant (CPA). (*Id.,* at p. 774.) Between the time of the arbitration hearing and the time of the award, the CPA/arbitrator worked for the insurance company appraiser/arbitrator, billing a total of $847.15 in fees. (*Id.,* at p. 775.) Noting the close professional relationship between the insurance company and the appraiser/arbitrator, the court concluded that the appraiser/arbitrator "is held to a higher standard of impartiality than are arbitrators generally." (*Id.,* at p. 777.) The *Figi* court concluded that the CPA/arbitrator "cannot be described as 'disinterested' when he has done business with the insurance company's appraiser during the pendency of an appraisal [*sic*][7] involving that company." (*Ibid.*) Ordering vacation of the arbitration award, the *Figi* court emphasized the current business relationship between the CPA/arbitrator and the insurance company's appraiser. (*Id.,* at p. 778.)

Finally, in *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d 1081, the arbitrator disclosed information but refused to disqualify himself. As pertinent here, the disclosure was that the arbitrator had a longstanding friendship with the father of the president of a company that was a party to the arbitration and the arbitrator was active in a mechanical contractor's organization in which the father was also active. The court concluded there was no bias sufficient for disqualification of the arbitrator and, hence, for vacation of the award. (*Id.,* at p. 1088.)

▆▆▆ We think these cases demonstrate that Huckins was not obligated to disclose his past client relationship with CSAA's attorneys. In this respect, it is helpful to focus carefully upon the relationships discussed in the preceding cases and to compare them with the possible bias engendered by Huckins's relationship.

Thus, for example, in *Commonwealth Coatings Corp., supra,* 393 U.S. 145 and in *Wheeler, supra,* 63 Cal.App.3d 345, the arbitrator had a *pecuniary interest* because he performed services for a party or for attorneys for a party to the arbitration. Similarly, in *Figi, supra,* 108 Cal.App.3d 772, the supposedly "neutral" arbitrator was employed by the appraiser/arbitrator nominated by the insurance company that was a party to the arbitration. In these cases, a reasonable inference of bias is drawn because the arbitrator might be thought to favor a side that may pay him or her money.

Here, Huckins has no comparable pecuniary interest. He paid fees, not received them. Thus, if the prior representation is to be condemned it is as a "substantial business relationship" under *Johnston* v. *Security Ins. Co., supra,* 6 Cal.App.3d 839. The inference of bias from such a relationship is

---

[7] We think the court must have meant arbitration, not appraisal.

markedly different from that drawn from a pecuniary interest. The existence of bias depends on whether one can draw an inference of favoritism not because the arbitrator may receive money but because the "arbitrator has a business-connected relationship that may lead him or her to place unusual trust or confidence in one side as opposed to the other.

Assuming *Johnston* is correctly decided on its facts, it is distinguishable for several reasons. There, a witness in the arbitration was working on a case referred by the "neutral" arbitrator *at the time of the arbitration hearing.* (6 Cal.App.3d at p. 843.)[8] Here, of course, any business relationship between Huckins and CSAA's attorneys had ended many months before the arbitration. Moreover, in *Johnston,* the fatal business relationship was one directly between the arbitrator and a witness to the arbitration. Here, the relationship is more remote. Huckins never had any business relationship with the attorney representing CSAA in the arbitration. Rather, his prior relationship was with a partner in the firm who did not appear in the arbitration. Finally, by any reckoning, the services rendered by the firm to Huckins were insignificant.

All things considered, the possibility of bias which Banwait suggests is that Huckins would for some reason reward a law firm because he had previously been represented to an insignificant extent by one of its partners and had paid for the representation. We do not think the inference proposed by Banwait rises to a *reasonable* impression of possible bias. (*Gonzales* v. *Interinsurance Exchange, supra,* 84 Cal.App.3d at p. 64.) Rather, we think the trial court correctly concluded the record shows no substantial business relationship between Huckins and CSAA's attorneys sufficient to require Huckins to disclose it. Indeed, we see no material distinction between the instant case and *San Luis Obispo Bay Properties, supra,* and *Gonzales, supra,* where longstanding close personal relationships were found insufficient to create a reasonable possibility of bias. (See also *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d at p. 1088.)

We must also disagree with the trial court's conclusion that section 602 should be applied here to disqualify the arbitrator. Plainly that statute applies to the disqualification of jurors and not to attorneys who are arbitrators. We think section 602 is primarily designed to protect lay jurors from being unduly swayed by the presentations of attorneys who have represented the jurors in the past. Although we do not suggest section 602 has an exception for attorneys when it is applied in its appropriate jury trial context, the primary evil it is designed to protect against—the undue influence of an attorney upon a lay juror who has been a client—is simply nonexistent

---

[8] The same was true in *Figi,* as the court emphasized. (108 Cal.App.3d at p. 778.)

in the present context. We see no reason to adopt a rule providing for absolute disqualification of an attorney/arbitrator in circumstances where it is not reasonably required.

As former trial judges, we are aware that trial courts often appropriately resort to the least offensive ground to resolve disputes of this nature. However, trial judges well know that appellate courts cannot read lips. The trial court's express findings preclude any conclusion that Huckins was corrupt or biased, and the trial court's conclusion there was no substantial business relationship between Huckins and the firm was correct. (*Gonzales, supra,* at p. 66.) Consequently, since the only ground stated by the trial court for setting aside the award (the violation of section 602) was wrong, the court erred.

Since Banwait does not contend the trial court erred in rejecting any of its other assaults on the award (and in any event, substantial evidence supports each of the trial court's other conclusions), the trial court's order setting aside the award must be reversed. On remand the trial court shall enter an order confirming the award.

### DISPOSITION

The judgment (order) appealed from is reversed and the matter is remanded to the trial court.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied November 23, 1988, and respondent's petition for review by the Supreme Court was denied January 18, 1989.