[No. B131509. Second Dist., Div. Three. Apr. 30, 2001.]

MAHFOUZ MICHAEL, Plaintiff and Respondent, v.
AETNA LIFE & CASUALTY INSURANCE COMPANY et al.,
Defendants and Appellants.

COUNSEL

Breidenbach, Buckley, Huchting, Halm & Hamblet, Gary A. Hamblet and Kendall Caudry for Defendants and Appellants.

Robie & Matthai, Pamela E. Dunn and Daniel J. Koes for United Services Automobile Association and State Farm General Insurance Company as Amici Curiae on behalf of Defendants and Appellants.

Daniel E. Budorick for Plaintiff and Respondent.

Quisenberry & Kabateck, Brian S. Kabateck, Terry R. Bailey, Paul N. Philips and Penny J. Manship as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**KITCHING, J.—**

## I.   INTRODUCTION

An insurer appeals from an order vacating a fire insurance appraisal award because of alleged "corruption" in a party-selected appraiser pursuant to

Code of Civil Procedure section 1286.2, subdivision (b).[1] Insurance Code section 2071 requires appraisers to be "disinterested." Since an appraisal agreement is subject to the California Arbitration Act (§ 1280 et seq.), we conclude that to be "disinterested," a party-selected appraiser must make the disclosure that section 1281.9, subdivision (e) requires all arbitrators to make.

Among other requirements, section 1281.9, subdivision (e) requires an appraiser to disclose matters that would cause a person aware of the facts to reasonably entertain a doubt that the appraiser would be able to be impartial. We find that a failure to make this disclosure constitutes "corruption in any of the arbitrators" and therefore provides a ground for vacating an appraisal award under section 1286.2, subdivision (b). In this case, under section 1281.9, subdivision (e), the facts did not require disclosure by the party-selected appraiser. Therefore no "corruption" in the appraiser existed that required vacation of the appraisal award pursuant to section 1286.2, subdivision (b). We therefore reverse the order vacating the appraisal award.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff Dr. Mahfouz Michael, doing business as Mark John Medical Group (Michael), conducted a medical practice in a building at 2651 South Western Avenue in Los Angeles. Aetna Life & Casualty Insurance Company (Aetna), affiliated with Farmington Casualty Company (Farmington), issued a policy insuring those premises. During rioting on April 30, 1992, fire destroyed the insured premises.

Michael notified Aetna of the loss and demanded indemnification for damage to the building and interruption of the business. When Aetna failed to compensate him for these losses, Michael sued Aetna for breach of insurance contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.

The fire insurance policy contained a clause providing for an appraisal procedure to resolve disputes about the value of property or the amount of loss.[2] Aetna exercised its right under the policy and initiated an appraisal.

Before August 1, 1997, Aetna selected R. Dixon Grier, a certified public accountant and a member of the firm of Matson, Driscoll & Damico

---

[1] Unless otherwise specified, statutes in this opinion will refer to the Code of Civil Procedure.

[2] The appraisal clause stated, in relevant part: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding."

(MD&D), as its appraiser. Michael selected David Fox as his appraiser. Grier and Fox selected John Costello as umpire. After appraisal proceedings on January 28, 1998, the panel's award, issued February 17, 1998, determined that Mark John Medical Group sustained $356,249 in lost business income and incurred $95,000 necessary expenses. Umpire Costello and appraiser Grier signed the award. Appraiser Fox did not sign the award.

On May 28, 1998, Michael moved to correct or vacate the appraisal panel's award pursuant to section 1286.2. Michael requested vacation of the award on the ground that there was corruption in Aetna's arbitrator, and specifically that Aetna's appraiser Grier failed to inform Michael of Grier's prior and ongoing relationship with Aetna. Michael alleged that Grier worked for Aetna on prior occasions, that the relationship of Grier and MD&D with Aetna meant Grier was not disinterested, and these business relationships and Grier's failure to disclose them prohibited Grier from acting as appraiser.

Aetna's opposition addressed two of Michael's allegations of impropriety: (1) that Grier acted as a party-selected arbitrator for Aetna in an insurance claim by Sea Mar International, and (2) that other members of MD&D did business with Aetna. Aetna's opposition argued that this evidence did not show sufficient bias to justify vacating the award.

Michael's reply relied on further evidence discovered while the petition to vacate was pending. According to that evidence, Aetna made payments to the MD&D firm during 1996, 1997, and 1998, and made payments to MD&D specifically for Grier's services in another arbitration, *Bradford Personnel v. Trammell Crow*.

On February 26, 1999, the trial court ruled that Insurance Code section 2071 required a party-selected appraiser to be "disinterested." It found that because MD&D did substantial business with Aetna and some income went to Grier or to Grier's professional corporation, the association between Aetna and MD&D had significant potential advantage to Grier, which was an impermissible financial interest. The court found that, at a minimum, there existed an impression of possible bias sufficient to disqualify Grier, and vacated the appraisal award.

Aetna filed a timely notice of appeal on April 23, 1999.

## III. Issues

The main issues in this case are:

1. Whether this appeal was properly taken;

2. What Insurance Code section 2071 means when it requires a party-selected appraiser to be "disinterested";

3. What disclosure a party-selected appraiser must make to the parties of an appraisal pursuant to section 1281.9, subdivision (e);

4. Whether the failure to make the disclosure required by section 1281.9, subdivision (e) constitutes "corruption in any of the arbitrators" as provided by section 1286.2, subdivision (b); and

5. Whether substantial evidence supports the vacation of the appraisal award in this case.

## IV. Appealability

Section 1294, subdivision (c) states: "An aggrieved party may appeal from: [¶] . . . [¶] An order vacating an award unless a rehearing in arbitration is ordered." Aetna appealed from the trial court's February 26, 1999, order vacating the appraisal award and setting a status conference for March 31, 1999. Michael claims that because a September 24, 1999, reporter's transcript shows that the trial court granted Aetna's request to compel a new appraisal, the February 26, 1999, order is not appealable. We disagree.

First, the record on appeal contains no order reflecting the September 24, 1999, ruling, which appears only in a reporter's transcript. ▋ An order is a document which is either entered in the court's permanent minutes or signed by the judge and stamped "filed." (*Shpiller v. Harry C.'s Redlands* (1993) 13 Cal.App.4th 1177, 1179 [16 Cal.Rptr.2d 814].)

▋ Second, the notice of appeal divested the trial court of jurisdiction. This rule protects the appellate court's jurisdiction by preserving the status quo until this court decides the appeal, and prevents the trial court from rendering an appeal futile by altering the appealed order by conducting other proceedings that may affect it. (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938 [20 Cal.Rptr.2d 841].) As the trial court lacked jurisdiction, the ruling on September 24, 1999, granting a request to compel a new appraisal

provides no basis for the exception to appealability in section 1294, subdivision (c).

We conclude that the appeal is properly taken.

## V. THE STANDARD OF REVIEW

■ This court independently reviews whether a trial court has correctly construed the relevant statutes. (*Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512-513 [21 Cal.Rptr.2d 578].) The trier of fact determines the factual question whether a particular relationship requires disclosure in each case. (*Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 776 [166 Cal.Rptr. 774]; *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 527 [265 Cal.Rptr. 868].) This court reviews the trial court's factual findings relating to its vacation of the award according to the substantial evidence rule. (*Webb v. West Side District Hospital* (1983) 144 Cal.App.3d 946, 949 [193 Cal.Rptr. 80], disapproved on other grounds in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

## VI. DISCUSSION

### A. *The California Arbitration Act Governs the Appraisal Procedure in Insurance Code Section 2071*

As reflected in the Aetna insurance policy, Insurance Code sections 2070 and 2071 governing fire insurance policies in California establish an "appraisal" procedure when the insured and the insurer cannot agree on the cash value or the amount of loss. Insurance Code section 2071 requires the standard form of fire insurance policy to state, in relevant part: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and *disinterested* appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and *disinterested* umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." (Italics added.)

■ Insurance Code section 2071 does not define its requirement that appraisers be "disinterested" and provides no means to challenge an award made by appraisers who are not disinterested. However, the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) guides our interpretation of Insurance Code section 2071. That is because an agreement in an insurance policy to conduct an appraisal constitutes an "agreement" within the meaning of section 1280, subdivision (a).[3] An agreement providing for an appraisal is therefore considered to be an arbitration agreement subject to statutory contractual arbitration law in the California Arbitration Act. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 [98 Cal.Rptr.2d 378]; *Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 533-534 [260 Cal.Rptr. 713].)

We read the California Arbitration Act and Insurance Code section 2071 together to define an appraiser's duties and to determine how to enforce those duties. Code of Civil Procedure section 1286.2 of the California Arbitration Act provides a way to enforce Insurance Code section 2071. (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 401, fn. 4 [90 Cal.Rptr. 608, 475 P.2d 880].) The trial court must vacate an appraisal award if it determines that any grounds in section 1286.2 exist. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 28, 33; *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243 [28 Cal.Rptr.2d 402].) The issue in this case is whether substantial evidence supports the vacation of the appraisal award because of "corruption" in any of the appraisers pursuant to section 1286.2, subdivision (b).

### B. *A Party-selected Appraiser Must Disclose What Section 1281.9, Subdivision (e) Requires All Arbitrators to Disclose*

■ Section 1281.9 of the California Arbitration Act imposes disclosure requirements on arbitrators and appraisers. "[P]roposed neutral arbitrators" must comply with disclosure requirements in section 1281.9, subdivisions (a) through (d).[4] Section 1281.9, subdivision (e), however, uses different language. Subdivision (e) states, in relevant part: "*An arbitrator* shall disclose to all parties the existence of any grounds specified in Section 170.1

---

[3]Section 1280 states: "As used in this title: [¶] (a) 'Agreement' includes but is not limited to agreements providing for valuations, appraisals and similar proceedings . . . ."

[4]The appointment of a neutral arbitrator in an arbitration is the equivalent of the selection of an "umpire" in an appraisal. Section 1280, subdivision (d) states: " 'Neutral arbitrator' means an arbitrator who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them." Insurance Code section 2071 describes the selection of an "umpire" as follows: "The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located."

for disqualification of a judge; and, if any such ground exists, shall disqualify himself or herself upon demand of any party made before the conclusion of the arbitration proceeding." (Italics added.) By using the phrase "an arbitrator," subdivision (e) does not limit itself to "proposed neutral arbitrators." All arbitrators, and therefore all appraisers, must comply with subdivision (e).

### C. *The Disclosure Required by Section 1281.9, Subdivision (e)*

The Legislature added subdivision (e) to section 1281.9 by an amendment effective January 1, 1998. Subdivision (e) incorporated a disclosure requirement based on section 170.1. (See fn. 5, *post.*) Section 1281.9, subdivision (e) now requires arbitrators and appraisers to disclose to parties any grounds in section 170.1 that would require disqualification of a judge. Section 170.1, subdivision (a) contains numerous criteria for disqualification of a judge. Those which are relevant here are as follows:

"(a) A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶]

"(2) The judge served as a lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a lawyer for any party in the present proceeding or gave advice to any party in the present proceeding upon any matter involved in the action or proceeding. [¶] A judge shall be deemed to have served as a lawyer in the proceeding if within the past two years: [¶] (A) A party to the proceeding or an officer, director, or trustee of a party was a client of the judge when the judge was in the private practice of law or a client of a lawyer with whom the judge was associated in the private practice of law[.] [¶] . . . [¶]

"(3) The judge has a financial interest in the subject matter in a proceeding or in a party to the proceeding. [¶] . . . [¶]

"(6) For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

Thus a party-selected appraiser, whom Insurance Code section 2071 requires to be "disinterested," must disclose matters which Code of Civil Procedure section 1281.9, subdivision (e) requires all arbitrators to disclose. Those matters are the ones set forth in Code of Civil Procedure section 170.1.

D. *Section 170.1, Subdivision (a)(6)(C) Requires an Appraiser to Disclose Dealings That Might Cause a Person Aware of the Facts to Reasonably Entertain a Doubt That the Appraiser Would Be Able to Be Impartial*

With regard to the disclosure required of arbitrators, before section 1281.9, subdivision (e) became effective, California case law generally applied the rule in *Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145 [89 S.Ct. 337, 21 L.Ed.2d 301] (*Commonwealth Corp.*) to motions to vacate pursuant to section 1286.2, subdivisions (a) and (b). (*Banwait v. Hernandez* (1988) 205 Cal.App.3d 823, 828 [252 Cal.Rptr. 647].) *Commonwealth Corp.* addressed the issue whether a neutral arbitrator's failure to disclose a previous business relationship with a party to the arbitration compelled vacation of the arbitration award on the ground that the award was " 'procured by corruption, fraud, or undue means' " or because there was " 'evident partiality . . . in the arbitrators.' " (*Commonwealth Corp., supra,* at p. 147 [89 S.Ct. at p. 338], quoting the United States Arbitration Act, 9 U.S.C. § 10.) *Commonwealth Corp.* concluded that the arbitrator was required to "disclose to the parties any dealings that might create *an impression of possible bias.*" (*Commonwealth Corp., supra,* at p. 149 [89 S.Ct. at p. 339], italics added.)

We view the *Commonwealth Corp.* disclosure rule as identical in substance to the section 170.1, subdivision (a)(6)(C) disclosure requirement. Section 1281.9, subdivision (e), by incorporating section 170.1, subdivision (a)(6)(C), gives the *Commonwealth Corp.* rule a source in California statute. Section 1281.9, subdivision (e) added a disclosure requirement that previously had not existed.[5] This disclosure requirement applies to all arbitrators and appraisers. ▪ Thus section 1281.9, subdivision (e) and section 170.1, subdivision (a)(6)(C) require appraisers and arbitrators to disclose to parties any reason that might cause a person aware of the facts to reasonably entertain a doubt that the appraiser (or arbitrator) would be able to be impartial.

Like the *Commonwealth Corp.* disclosure rule, the standard for disclosure under section 170.1, subdivision (a)(6)(C) is objective. The facts that must

---

[5]Former section 1282, added by amendment in 1993, stated in relevant part: "(e) An arbitrator *shall disqualify himself or herself, upon demand of any party* to the arbitration agreement made before the conclusion of the arbitration proceedings, on any of the grounds specified in Section 170.1 for disqualification of a judge." (Stats. 1993, ch. 768 (Sen. Bill No. 252), § 4, subd. (e), p. 4261, italics added.) This subdivision of section 1282 was deleted by amendment in 1997. (Stats. 1997, ch. 445 (Assem. Bill No. 1093), § 3.)

The 1997 amendment adding subdivision (e) to section 1281.9 added a disclosure requirement to this statute. In relevant part, section 1281.9, subdivision (e) now states: "An arbitrator *shall disclose to all parties* the existence of any grounds specified in Section 170.1 for disqualification of a judge; and, if any such ground exists, shall disqualify himself or herself upon demand of any party made before the conclusion of the arbitration proceeding." (Stats. 1997, ch. 445 (Assem. Bill No. 1093), § 2, italics added.)

be disclosed are those which might cause a reasonable person to entertain a doubt that the appraiser would be able to be impartial. Moreover, the statutory test does not require actual bias. Where a reasonable person would entertain doubt whether the appraiser or arbitrator was impartial, the appellate courts are not required to speculate whether bias was actual or merely apparent, or whether impartial consideration of the evidence and dispassionate decision of the matter would have led to the same result. (*Roitz v. Coldwell Banker Residential Brokerage Co.* (1998) 62 Cal.App.4th 716, 723 [73 Cal.Rptr.2d 85].)

E. *The Failure to Disclose Facts Required by Section 1281.9, Subdivision (e) Constitutes a Form of "Corruption" and Provides a Ground to Vacate an Appraisal Award Pursuant to Section 1286.2, Subdivision (b)*

Michael's motion to vacate the appraisal award alleged that Grier had business dealings and a business relationship with Aetna, which meant he was not "disinterested." Michael's motion therefore claimed that Grier's failure to disclose his business dealings and business relationship with Aetna established the statutory ground of "corruption," which required vacation of the award.

A court may vacate an appraisal award only if it finds that a ground in section 1286.2 exists. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 28, 33; *Marsch v. Williams, supra,* 23 Cal.App.4th at p. 243.) Where statutes require disclosure, existing case law does not clearly identify the failure to make that required disclosure as "corruption" in the arbitrator or appraiser for purposes of vacating an award pursuant to section 1286.2, subdivision (b). (See, e.g., *Figi v. New Hampshire Ins. Co. supra,* 108 Cal.App.3d at pp. 776-778; *Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 841-843 [86 Cal.Rptr. 133]; *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1507 [38 Cal.Rptr.2d 107]; *Gebers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1653 [45 Cal.Rptr.2d 725]; *Banwait v. Hernandez, supra,* 205 Cal.App.3d at p. 828; *Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087 [213 Cal.Rptr. 62], disapproved on other grounds in *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 27-28.)

We now hold that where an appraiser or arbitrator fails to disclose matters required to be disclosed by section 1281.9, subdivision (e), and a party later discovers disclosure should have been made, that failure to disclose constitutes one form of "corruption" for purposes of section 1286.2, subdivision (b) and thus provides a ground for vacating an award. This is because the failure to disclose such matters, even if no actual bias is present,

represents a kind of "corruption" by creating the appearance that the appraiser or arbitrator is concealing something important and relevant to his or her impartial participation in the appraisal or arbitration proceeding.

### F. *Application of the Disclosure Rule in Section 1281.9, Subdivision (e)*

Application of the section 1281.9, subdivision (e) disclosure rule does not always require vacation of an arbitration award. (*Banwait v. Hernandez, supra,* 205 Cal.App.3d at p. 828.) The cases must be decided on their facts. (*San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 568 [104 Cal.Rptr. 733]; *Betz v. Pankow, supra,* 31 Cal.App.4th at p. 1508.) In particular, whether a particular relationship between an arbitrator/appraiser and a party or party's representative requires disclosure is a factual question to be decided by the trier of fact in each case. (See *Cobler v. Stanley, Barber, Southard, Brown & Associates, supra,* 217 Cal.App.3d at p. 527.)

As stated, before 1998 most cases involving disclosure issues applied the *Commonwealth Corp.* rule, and many involved neutral arbitrators. These cases, however, offer guidance as to the disclosure now required by section 1281.9, subdivision (e) as applied to the facts in this appeal.

#### 1. *Disclosure Required Because of Substantial Business Dealings During a Pending Proceeding*

■ An appraiser or arbitrator who represents or performs services for a party or for the law firm representing the party while the appraisal or arbitration is pending must disclose such activity. In *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775, 84 A.L.R.3d 343], a medical member of the arbitration panel failed to disclose he had served as an expert witness for the law firm representing a party to the arbitration, and had testified in a court case on behalf of the firm while the arbitration hearings were proceeding. (*Id.* at p. 370.) The medical member's failure to reveal his relationship with the law firm required vacation of the arbitration award because, under the *Commonwealth Corp.* rule, it created an " 'impression of possible bias.' " (*Id.* at p. 372.) In *Figi v. New Hampshire Ins. Co., supra,* 108 Cal.App.3d 772, the umpire in an appraisal proceeding was a certified public accountant who, between the arbitration hearing and the award, performed work for and billed one of the party-selected appraisers. This current substantial business relationship required vacation of the appraisal award. (*Id.* at pp. 775-778.) In *Gebers v. State Farm General Ins. Co., supra,* 38 Cal.App.4th 1648, the insurer selected an appraiser whom the insurer currently retained as an expert witness in two pending court actions.

As a "direct pecuniary interest," this ongoing litigation work required vacation of the appraisal award because it created an " 'impression of possible bias.' " (*Id.* at pp. 1652-1653.) In *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500 [55 Cal.Rptr.2d 685], Attorney Nye represented a party as attorney before arbitrator Lindenauer, while Attorney Lindenauer represented a party in a different case before arbitrator Nye. This was sufficient to create an impression of possible bias and to require vacation of the arbitration award. (*Id.* at pp. 506-507.)

### 2. Disclosure Required Because of a Substantial Prior or Continuing Business Relationship

An appraiser or arbitrator must also disclose substantial prior or continuing business relationship with a party or with a party's representative, even if the business activity does not occur during a pending appraisal or arbitration. In *Johnston v. Security Ins. Co., supra,* 6 Cal.App.3d 839, the neutral arbitrator failed to disclose his acquaintanceship with the insureds' counsel and with the appraiser whom the claimants selected, and did not disclose his association with insureds' counsel on various cases and the fact that he had referred cases to claimants' counsel, who on the date of the hearing was representing a client referred to him by the neutral arbitrator. These facts created an impression of bias and required vacation of the appraisal award. (*Id.* at pp. 842-844.) In *Neaman v. Kaiser Foundation Hospital* (1992) 9 Cal.App.4th 1170 [11 Cal.Rptr.2d 879], a neutral arbitrator disclosed he had previously acted as an arbitrator in matters for Kaiser Foundation Hospital, but failed to disclose that on five prior occasions he was Kaiser's party-selected arbitrator. This constituted a substantial business relationship that should have been disclosed to the parties and required vacation of the arbitration award. (*Id.* at p. 1177.)

### 3. Disclosure Not Required Where There Is Only a Social Acquaintance, Membership in a Professional Organization, or Insubstantial Business Dealings

Other cases, finding no impression of possible bias despite lack of disclosure by an appraiser or arbitrator, are likewise instructive. Social acquaintance, even of long duration and of a personal nature, without a substantial business relationship does not create an impression of possible bias. (*Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64-65 [148 Cal.Rptr. 282]; *Ray Wilson Co. v. Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d at pp. 1086-1087, disapproved on other grounds in *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 27-28.) Membership in a professional organization does not provide a credible basis for inferring an

impression of bias. (*San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co., supra*, 28 Cal.App.3d at p. 567; *Ray Wilson Co., supra*, at p. 1088.)

Moreover, to create an impression of possible bias that therefore requires disclosure, a business relationship must be substantial and involve financial consideration. In *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co., supra*, 28 Cal.App.3d 556, the neutral appraiser/arbitrator and a party-selected appraiser referred overflow cases to one another once or twice a year, never for consideration, and without any showing that they gave each other a preference for referred cases or that they referred more cases to one another than they referred to other arbitrators. These facts created no impression of possible bias and therefore no disclosure was required. (*Id.* at pp. 567-568.) No substantial business relationship existed when the arbitrator was the client and paid fees to the attorney rather than receiving them, where the business relationship ended many months before the arbitration, and where it involved payment of insignificant fees ($400 for 3.91 hours of legal services) to another partner of the firm and not to the attorney handling the arbitration. (*Banwait v. Hernandez, supra*, 205 Cal.App.3d at pp. 825, 830-831.)

In *Betz v. Pankow, supra*, 31 Cal.App.4th 1503, an attorney, Sandborg, was a partner in the Bronson law firm, but left that firm six months before he was selected an arbitrator. The Bronson law firm represented three businesses of Pankow's, a party to the arbitration, in a single matter concerning insurance coverage. While he was a partner at the Bronson firm, Sandborg had never met Pankow. Sandborg joined another law firm before the Bronson firm completed its representation of Pankow in the insurance coverage litigation. At the time of the arbitration, Sandborg was no longer a member of his former law firm and was not aware that the Bronson firm had ever represented Pankow's businesses. There was no evidence that the former law firm ever represented Pankow's businesses in any matter other than a single action concerning insurance coverage. These facts dispelled any impression of possible bias and required reversal of the judgment vacating the arbitration award. (*Id.* at p. 1511.)

In light of this case law and the disclosure requirements of sections 1281.9, subdivision (e) and 170.1, subdivision (a)(6)(C), we turn to the facts of this appeal.

G.  *The Evidence Shows That No Disclosure Was Required and No Corruption in the Appraiser Occurred*

Michael's motion to vacate the appraisal award argued that Grier should have disclosed that he had worked for Aetna on prior occasions and that

Grier and MD&D had an ongoing business relationship with Aetna which barred Grier from acting as an appraiser. We set forth the parties' showings and our conclusions in light of the legal principles discussed, *ante*.

### 1. *Grier Did Not Have a Substantial Ongoing Employment Relationship with Aetna*

■ Based on Grier's work on the Sea Mar International case and the *Bradford Personnel v. Trammel Crow* case, Michael tried to characterize Grier's involvement in the *Michael* case as an "ongoing employment relationship" with Aetna. Michael admitted, however, that the Sea Mar International matter ended in January 1996. Grier's work on the *Bradford Personnel v. Trammell Crow* case ended in July 1997. We have reviewed the record and conclude that Grier did not perform substantial work on the *Michael v. Aetna* matter before Grier contacted Michael's appraiser, Mr. Fox, on August 1, 1997. Moreover, as we conclude, *infra*, it is undisputed that while he worked on the *Bradford Personnel* matter, Grier did not know of Aetna's presence in the *Bradford Personnel* case or that Aetna was the source of the funds used to pay him for his services. Therefore a person aware of the facts would not reasonably entertain a doubt that Grier would be able to be impartial, and Grier was not required to disclose the Sea Mar International or *Bradford Personnel v. Trammell Crow* cases.

### 2. *Grier Could Not Have Disclosed Aetna's Payments for His Services in the Bradford Personnel Matter*

Michael's motion to vacate argued that Grier did not disclose his ongoing work relationship with Aetna, based on evidence that Farmington, an Aetna subsidiary, paid $6,346.75 to Grier/MD&D for Grier's services as consultant on the *Bradford Personnel v. Trammell Crow* case from February to July 1997.

By declaration, Grier stated that during the *Michael* appraisal he was not aware that Aetna had paid MD&D for services he rendered in the *Bradford Personnel v. Trammell Crow* case. His declaration stated that during the *Bradford Personnel* case, he was retained by and reported to Robert J. Lyman, an attorney for Trammell Crow. Grier declared that while working on the *Bradford Personnel* case, he did not know Aetna insured Trammell Crow. Grier stated he did not communicate with anyone at Aetna, and viewed Trammell Crow and its counsel as his clients, not Aetna. He sent his billing statements to counsel for Trammell Crow, not to Aetna. Grier stated that he had only recently learned that Aetna paid MD&D for services Grier rendered in the *Bradford Personnel* case. Grier's declaration stated: "At no

time during the pendency of the appraisal proceedings in connection with Dr. Michael's claim against Farmington Casualty Company was I aware that Matson, Driscoll & Damico was paid by Aetna for services I rendered in the *Bradford Personnel* case."

Grier's evidence is not disputed. It shows Grier did not know of Aetna's presence in the *Bradford Personnel* case or that Aetna was the source of the funds used to pay him for his services. It provides no evidence of a substantial or ongoing business relationship which reasonably creates a doubt he would be able to be impartial. Moreover, if Grier did not know of Aetna's presence in the *Bradford Personnel* case during his involvement in *Michael v. Aetna*, he could not have been expected to disclose it.

### 3. *Grier Did Not Receive Payments Aetna Made to Other Offices of Grier's Firm*

Michael's motion to vacate offered evidence that Aetna or its subsidiaries paid substantial amounts to MD&D in 1996, 1997, and 1998. Michael alleged, based on Grier's declaration, that Aetna paid Grier and/or MD&D before, during and after the time Grier served as appraiser in the *Michael v. Aetna* matter, and alleged that as senior partner of the firm, Grier would benefit from payments to the partnership whether he worked on the matter or not.

Aetna paid these amounts to various offices of MD&D, a national firm, located outside California. Aetna's opposition to the motion to vacate conceded that MD&D did work for Aetna in other parts of the country, but based on Grier's declaration, alleged that Grier had no material financial interest in the income generated by the firm's offices in other parts of the country. Even if other MD&D partners had a business relationship with or received income from Aetna, Grier did not; the other partners' income or business with Aetna did not generate a "pecuniary interest" on Grier's part. Thus a person aware of the facts would not reasonably entertain a doubt that Grier would be able to be impartial.

Grier's declaration also stated that MD&D had offices nationwide. Other offices in other states did work for Aetna or its affiliated companies, but Grier did not know the nature of that work or the income that work generated. Grier stated: "My income is not directly impacted by business done in other states, since we are an independent profit center. In other words, I have no material financial interest in any profits which might be derived by partners of the firm who may do work for Aetna in other states."

This evidence was not disputed. Grier's office was an independent profit center and neither it nor he received income from work which other partners

in MD&D offices in other states performed for Aetna. We conclude that Grier had no material financial interest in profits derived by firm partners who worked for Aetna in other states.

Thus the evidence shows that Grier performed services for Aetna in only two prior cases. Both cases had ended before the *Michael v. Aetna* matter began. When Grier was appraiser during *Michael v. Aetna*, he did not know Aetna was involved in the *Bradford Personnel v. Trammell Crow* case and thus could not have disclosed that fact. Finally, undisputed evidence shows that Grier and his MD&D office did not have a material financial interest in profits of other MD&D partners who worked for Aetna in other offices. Therefore the evidence does not show that Grier had a substantial business relationship with Aetna. There is no substantial evidence of facts that would cause a person aware of the facts to reasonably entertain a doubt that Grier would be able to be impartial. Thus no disclosure was required by Mr. Grier, and no "corruption" in an arbitrator provided a ground for vacating the appraisal award pursuant to section 1286.2, subdivision (b).

We therefore reverse the order vacating the appraisal award.

## VII. Disposition

The order vacating the appraisal award is reversed and the matter is remanded to the trial court with directions to set aside the order vacating the appraisal award and to enter a new order confirming that award. Costs on appeal are awarded to respondent Aetna Life & Casualty Insurance Company. Michael's request for sanctions is denied.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 30, 2001, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 25, 2001. Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.