164 Cal.App.4th 930 (2008)
RANDAL D. HAWORTH et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; SUSAN AMY OSSAKOW, Real Party in Interest.
No. B204354.
Court of Appeals of California, Second District, Division Five.
July 10, 2008.
As modified July 28, 2008.
*934 Schmid & Voiles, Suzanne De Rosa and Denise Greer for Petitioners. No appearance for Respondent.
Bostwick & Associates, Jeffrey S. Mitchell; Dunn & Koes, Pamela E. Dunn, Daniel J. Koes and Mayo L. Makarczyk for Real Party in Interest.

OPINION
KRIEGLER, J.
Petitioners Randal D. Haworth and The Beverly Hills Surgical Center, Inc. (collectively referred to as Haworth), seek a writ of mandate directing respondent court to reinstate an arbitration award in their favor. The arbitration award found Haworth not liable on claims of medical malpractice and battery in relation to cosmetic surgery that Haworth performed on Susan Amy Ossakow (Ossakow). Respondent court vacated the award on the ground that one of the arbitrators failed to disclose that when he was a sitting judge he received a public censure by the California Supreme Court for disparaging his female employees and colleagues based on their physical attributes, sexuality, and ethnicity. Because respondent court correctly concluded that the arbitrator's censure would cause a reasonable person to doubt his impartiality, we hold that the arbitration award was properly set aside and deny the petition.

FACTS AND PROCEDURAL HISTORY
On September 11, 2003, Haworth performed an elective cosmetic procedure on Ossakow's lips. It was the fifth cosmetic procedure performed on *935 Ossakow's face. According to Ossakow, Haworth not only performed the agreed upon procedure, but further altered her nose and its underlying musculature without her consent. Ossakow alleged the procedures were done improperly, leaving her with pain, numbness, swelling, an inability to eat or speak normally, and deformities in her lip and chin areas. Ossakow filed an action against Haworth for medical malpractice and battery.
Because Ossakow had signed an arbitration agreement, the parties stipulated that the matter would be sent to binding, contractual arbitration. The arbitration agreement provided that the matter would be considered by a panel of three arbitrators, consisting of an arbitrator selected by each party and one "neutral" arbitrator. The agreement further provided that "the arbitrators shall be governed by the California Code of Civil Procedure provisions relating to arbitration."
Haworth selected an arbitrator and proposed four other arbitrators to serve as the neutral arbitrator, including retired Los Angeles Superior Court Judge Norman Gordon (Judge Gordon). Counsel for Ossakow then selected her arbitrator and stated she would be amenable to having Judge Gordon sit as the neutral arbitrator. Ossakow's counsel contacted Judge Gordon and asked if he were willing to serve as the neutral arbitrator. If Judge Gordon were willing, counsel asked that he send confirmation "along with any other pertinent information." Judge Gordon replied by accepting the appointment and enclosed a "Disclosure" revealing that he had been involved in legal proceedings with members of defense counsel's law firm, but otherwise had nothing to disclose to the parties.
Arbitration proceedings commenced. Haworth won a summary adjudication motion on the battery claim. The arbitration went forward on the medical malpractice claim. In a two-to-one decision, with Ossakow's chosen arbitrator dissenting, the panel found that Ossakow failed to prove the procedures were performed without consent, and that Haworth's performance did not fall below the relevant standard of care. The majority arbitrators stated that Ossakow was not credible because the severity of the symptoms to which she testified went beyond what she described to her doctors, adding, "This claimant has had five prior facial surgeries." Similarly, in summarizing Ossakow's expert's testimony, these arbitrators noted, "One thing probably everyone can agree upon, after five facial surgeries, [Ossakow] could have done without a sixth one."
After receipt of the arbitration award, Ossakow discovered that when Judge Gordon was on the bench, he had been publically censured by the California Supreme Court for making sexually explicit remarks, ethnic slurs, and derogatory comments to or about his female employees and colleagues based *936 on their physical attributes.[1] (See In re Gordon, supra, 13 Cal.4th 472, 473-474.) She thereupon moved respondent court to vacate the arbitration award because Judge Gordon did not disclose his censure prior to the arbitration, as required by California Code of Civil Procedure, section 1281.9.[2] Specifically, she asserted that Judge Gordon's censure revealed his bias toward women based on their physical attributes, a fact that raised questions regarding Judge Gordon's ability to be impartial in her case, and which should have been disclosed to the parties.
Respondent court granted Ossakow's motion to vacate the arbitration award. It found that a reasonable person advised of Judge Gordon's censure would entertain a doubt as to his impartiality, requiring disclosure pursuant to Code of Civil Procedure section 1281.9. The arbitration award was vacated, and a new arbitration ordered. The instant petition for writ of mandate followed.
On January 22, 2008, this court denied Haworth's petition, with one justice voting to issue an order to show cause. The California Supreme Court granted Haworth's petition for review and transferred the matter back to this court with directions to vacate the denial and issue an alternative writ of mandate. An alternative writ of mandate thereupon issued, directing respondent court to vacate its order or show cause why it should not be directed to do so by this court. By way of a minute order, respondent court respectfully declined to vacate its order. Thus, we turn to the merits of Haworth's petition.

STANDARD OF REVIEW
Generally, we review an order vacating an arbitration award de novo. (Malek v. Blue Cross of California (2004) 121 Cal.App.4th 44, 55-56 [16 Cal.Rptr.3d 687]; Reed v. Mutual Service Corp. (2003) 106 Cal.App.4th 1359, 1364-1365 [131 Cal.Rptr.2d 524] (Reed).) However, factual determinations underlying the order are reviewed for substantial evidence. (Reed, supra, 106 Cal.App.4th at p. 1365; Betz v. Pankow (1993) 16 Cal.App.4th 919, 923 [20 Cal.Rptr.2d 834] (Betz I).) This court has specifically held that whether an arbitrator had a duty to disclose information that might indicate bias is a *937 question of fact for the trial court and is entitled to deferential review. (Guseinov v. Burns (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903] (Guseinov).)
Nevertheless, the parties suggest that a de novo standard of review should be applied in this case because the facts underlying respondent court's determination that a reasonable person might doubt Judge Gordon's ability to be impartial are undisputed. There are cases suggesting that when the facts allegedly demonstrating bias are not in dispute, a de novo standard of review may be applied. (Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc. (2008) 162 Cal.App.4th 468, 476, fn. 7 [75 Cal.Rptr.3d 763]; Betz v. Pankow (1995) 31 Cal.App.4th 1503, 1508 [38 Cal.Rptr.2d 107] (Betz III).) However, the weight of authority applies the substantial evidence standard of review, even when the underlying facts are undisputed, recognizing that the question of whether the particular circumstances of a case require disclosure is itself a factual determination for the trial court to make. (E.g., Luce, Forward, Hamilton & Scripps, LLP v. Koch (2008) 162 Cal.App.4th 720, 734 [75 Cal.Rptr.3d 869] [arbitrator served with party's lawyer and witness on boards of professional organizations]; Guseinov, supra, 145 Cal.App.4th at pp. 951, 957 [arbitrator served as an uncompensated mediator in a prior case in which plaintiff's attorney represented a party]; O'Flaherty v. Belgum (2004) 115 Cal.App.4th 1044, 1105-1106 [9 Cal.Rptr.3d 286] (dis. opn. of Grignon, J.) [arbitrator in law firm dissolution was previously represented by the law firm for some parties and had separated from his own law firm in difficult circumstances]; Reed, supra, 106 Cal.App.4th at pp. 1370-1371 [arbitrators had a practice of entertaining prearbitration motions to limit or dismiss arbitrable claims]; Michael v. Aetna Life & Casualty Ins. Co. (2001) 88 Cal.App.4th 925, 931, 933 [106 Cal.Rptr.2d 240] (Michael) [arbitrator had prior and ongoing relationship with the defendant]; see also Figi v. New Hampshire Ins. Co. (1980) 108 Cal.App.3d 772, 776 [166 Cal.Rptr. 774].) While we recognize the conflict in the authorities as to the correct standard of review, we need not attempt to resolve the dispute, as our decision would be the same under either standard.

DISCUSSION
(1) The Code of Civil Procedure explicitly requires a person nominated for service as a neutral arbitrator in a contractual arbitration to disclose any matter that could cast doubt on his or her ability to be impartial.[3] Section 1281.9, subdivision (a), mandates that the proposed neutral arbitrator "shall disclose all matters that could cause a person aware of the facts to reasonably *938 entertain a doubt that the proposed neutral arbitrator would be able to be impartial." Such facts include any that would constitute grounds for a sitting judge to disqualify himself or herself, as required by section 170.1. (§ 1281.9, subd. (a)(1).) Section 170.1, subdivision (a)(6)(A) requires a judge to step aside if "[f]or any reason:
"(i) The judge believes his or her recusal would further the interests of justice.
"(ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial.
"(iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."
(2) The Legislature recently instructed the Judicial Council to promulgate a code of ethics to which neutral arbitrators "shall" adhere. (§ 1281.85, subd. (a).) In creating those "minimum" standards, the Judicial Council emphasized the overarching ethical duty of arbitrators to be impartial arbiters of the cases before them. (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitrations (Standards), std. 1 & com. to std. 5.) The ethics standards begin by defining a neutral arbitrator as one who is "to serve impartially." (Std. 2(a)(1).) Neutral arbitrators are charged with a general duty to uphold the integrity and fairness of the arbitration process by "maintain[ing] impartiality toward all participants in the arbitration at all times." (Std. 5.) A neutral arbitrator has a duty to refuse an appointment if he or she would not be able to be impartial. (Std. 6.) And, neutral arbitrators are specifically required to disclose any matter "that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial." (Std. 7(d).) Such matters are not limited to financial or personal relationships that might suggest partiality, but extend to any matter that reasonably could raise a question as to the arbitrator's ability to be impartial. (Com. to std. 7.) Section 1281.9, subdivision (a)(2), specifically incorporates those standards into its disclosure requirements.
(3) If a neutral arbitrator fails to make the required disclosures, any resulting arbitration award must be vacated. Section 1286.2, subdivision (a), provides that the court "shall" vacate an arbitration award if the court determines that specified grounds exist. One such ground is "corruption" in procurement of the award or in any of the arbitrators and a failure to make appropriate disclosures constitutes such corruption. (§ 1286.2, subds. (a)(1)-(2); Reed, supra, 106 Cal.App.4th at p. 1370; Michael, supra, 88 Cal.App.4th at pp. 937-938.) Similarly, section 1286.2, subdivision (a)(6), provides that an award shall be vacated if, "[a]n arbitrator making the *939 award ... failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware...." As the language of the statute makes clear, the court has no discretion to deny a motion to vacate if a failure to disclose is shown. (Ovitz v. Schulman (2005) 133 Cal.App.4th 830, 845 [35 Cal.Rptr.3d 117].)
Actual bias in an arbitrator is not required to trigger the disclosure requirements. (Guseinov, supra, 145 Cal.App.4th at p. 960.) Rather, the duty to disclose is measured by an objective, reasonable person standard. (Ibid.; Michael, supra, 88 Cal.App.4th at pp. 936-937.) As the court in United Farm Workers of America v. Superior Court (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4] put it, the question is whether an "`average person on the street'" aware of the facts would harbor doubts as to the arbitrator's impartiality. (See also Betz I, supra, 16 Cal.App.4th at p. 926 [reasonable person test applies to evaluate doubts about gender bias in arbitrator].) If so, the facts must be disclosed by the proposed neutral arbitrator, and his or her failure to do so will result in any arbitration award being vacated. (§ 1286.2, subd. (a)(2), (6).) That is precisely what happened in this case.
Respondent court concluded that a reasonable person aware of the fact that Judge Gordon had been censured for disparaging women on account of their physical attributes would harbor doubts that he could be impartial in this casea case involving a woman's allegation that her physical appearance, among other things, was damaged by a cosmetic surgeon's malpractice. Respondent court had evidence before it that Ossakow, a woman, was suing for malpractice and battery during elective cosmetic lip surgery. Judge Gordon agreed to preside at arbitration of that action. He sent a disclosure statement representing that the only information he had to reveal was that he worked with defense counsel in the past. He omitted reference to the fact that he had been censured by the California Supreme Court for his treatment of women, including his making disparaging comments on their physical appearance. (In re Gordon, supra, 13 Cal.4th at pp. 473-474.) Based on that evidence, respondent court correctly found that a reasonable person apprised of the facts would doubt Judge Gordon's ability to be impartial.
Haworth contends that, in fact, respondent court had no evidence to support its conclusion. Thus, he suggests respondent court actually found as a matter of law that Judge Gordon's censure had to be disclosed; that is, that section 1281.9 imposes a mandatory duty of disclosure on censured judges. Haworth overstates the record. Haworth points out that he objected to much of the evidence that Ossakow submitted with her motion to vacate. While several of those objections were sustained, respondent court noted that even if all objections had been sustained, its ruling would be the same. From that statement, Haworth concludes that respondent court acted without reference *940 to the evidence. But respondent court's ruling specifically stated that it was based on the particular facts of the case and not a per se rule of disclosure. In fact, Haworth did not object to all of Ossakow's evidence, so even if all of the objections were sustained, there would still be evidence for respondent court to consider. Indeed, the evidence to which there was no objection is the very evidence that justifies respondent court's ruling: Ossakow's declaration and complaint establishing that she was suing for botched cosmetic surgery; the fact of Judge Gordon's censure for disparaging female associates based on their physical attributes; and the "Disclosure" sent by Judge Gordon omitting reference to that censure.
(4) In respondent court's view, it was Haworth who was trying to improperly rewrite section 1281.9 to include a public records exception to the disclosure requirements. As he does here, Haworth suggested that because Judge Gordon's censure was published by the California Supreme Court, Ossakow, her attorney, or her chosen arbitrator should have discovered it. That argument ignores the plethora of statutory and case authority imposing the duty of disclosure squarely on the neutral arbitrator's shoulders. For example, section 1281.9 requires "the proposed neutral arbitrator" to disclose all matters that would cause a reasonable person to doubt an ability to be impartial. Section 1286.2, subdivision (a), makes an arbitrator's failure to disclose a ground for vacating any resulting award. (See also Reed, supra, 106 Cal.App.4th at p. 1370; Michael, supra, 88 Cal.App.4th at pp. 937-938.) The ethics standards are directed entirely toward neutral arbitrators, and are replete with admonitions that the arbitrators themselves must make necessary disclosures. (Stds. 5-8.) Standard 9 specifically places the burden on the neutral arbitrator to reasonably investigate whether there are matters that must be disclosed.
Even before Standard 9 was promulgated, the court in Betz v. Pankow (1993) 16 Cal.App.4th 931 [20 Cal.Rptr.2d 841] (Betz II) rejected the idea that the parties, rather than the arbitrator, must search an arbitrator's background to find disqualifying facts. In that case, it was discovered that at the time an arbitration award issued, one of the arbitrators had been a partner in a law firm that represented the prevailing party's business entities. Because that relationship was not disclosed, the losing party brought a motion to vacate the arbitration award. The prevailing party responded that his businesses' relationship with the arbitrator was a matter of public record and so could have been discovered by the losing party. The Betz II court rejected that argument, finding no duty on the part of a party or the party's counsel to investigate an arbitrator's background. (Betz II, supra, 16 Cal.App.4th at p. 937.) It noted that information's being a matter of public record does not make it a matter of common knowledge. (Ibid.) Parties cannot be expected to launch a tedious search to find information that the arbitrator is required to disclose in the first place. (Ibid.)
*941 In Kaiser Foundation Hospitals, Inc. v. Superior Court (1993) 19 Cal.App.4th 513, 516-517 [23 Cal.Rptr.2d 431], the court similarly stressed that the duty of disclosure rests with the arbitrator. Though Kaiser sent an artfully drafted letter agreeing to use a proposed arbitrator "even though" he had served as a party arbitrator both for and against Kaiser, the court did not excuse the arbitrator for failing to disclose his prior involvement with Kaiser to the other parties. (Ibid.) While the court recognized that actual knowledge of disqualifying facts may preclude a party from later seeking to vacate an arbitration award, it did not believe the letter was enough to impute such knowledge to the parties before it. (Id. at p. 517.) Instead, the court approved an admonition to Kaiser that in the future it demand that its arbitrators make full disclosure, regardless of what Kaiser itself might know and disseminate. (Ibid.) In the same vein, the court in Fininen v. Barlow (2006) 142 Cal.App.4th 185, 190-191 [47 Cal.Rptr.3d 687] was willing to deny a motion to vacate an arbitration award, despite the arbitrator's nondisclosure, only because the party seeking to vacate the award had so much actual knowledge of the undisclosed facts that it would be "absurd" to grant its motion. (See also International Alliance of Theatrical Stage Employees, etc. v. Laughon (2004) 118 Cal.App.4th 1380, 1390 [14 Cal.Rptr.3d 341] [no actual notice of disqualifying facts arose when prior award involving defense counsel and sitting arbitrator was introduced into evidence].) In other words, an arbitrator's duty of disclosure will not be excused absent unique circumstances. In this case, there is no evidence that Ossakow had actual knowledge of Judge Gordon's censure sufficient to excuse him from his disclosure requirements. Haworth cannot shift Judge Gordon's burden to Ossakow.[4]
Haworth further argues that the purpose of judicial censure is to promote confidence in the judicial system, not to adjudicate facts sufficient to show, for example, gender bias. Thus, he asserts, a censure cannot form the "evidentiary predicate" for a finding of judicial bias or show a "causal connection" between the bias and any corruption of the arbitral process. Haworth's argument goes to an inquiry into actual bias on the part of an arbitrator. As we have seen, actual bias is not the standard by which the need for disclosure is measured. Rather, the question here is whether a reasonable person apprised of the fact that Judge Gordon was censured for his disparagement of female associates based on their physical attributes would entertain a doubt as to his ability to be impartial in this case.
(5) Even so, the fact is that Judge Gordon's censure was based on findings of fact and conclusions of law, reported by special masters appointed by the California Supreme Court, which were found justified and to warrant *942 censure. (In re Gordon, supra, 13 Cal.4th at pp. 473-474.) While Judge Gordon did not dispute the findings of misconduct against him, the general rule is that discipline will not be imposed in the absence of clear and convincing evidence sufficient to sustain a charge to a reasonable certainty. (Fletcher v. Commission on Judicial Performance (1998) 19 Cal.4th 865, 878 [81 Cal.Rptr.2d 58, 968 P.2d 958].) Moreover, judicial discipline varies depending on the severity of the misconduct, ranging from advisory letters to outright removal from the bench, and censure is one of the most severe forms of discipline available. (Cal. Const., art. VI, § 18; Rothman, Cal. Judicial Conduct Handbook (3d ed. 2007) §§ 12.86-12.88, pp. 663-666.) Censure is not imposed without an investigation, a hearing, and proof sufficient to afford the responding judge with due process protections. (E.g., Judicial Council of Cal., Com. on Judicial Performance, Rules of the Com. on Jud. Performance (Oct. 2007), rules 106-136.)
Additionally, Judge Gordon's censure has been cited by the Judicial Council as an example of gender bias that is impermissible in the judiciary. In its Guidelines for Judicial Officers, the Judicial Council cites In re Gordon, supra, 13 Cal.4th. at pages 473-474 as an example of conduct that must not be tolerated even in informal settings within the court. (Judicial Council of Cal., Advisory Com. on Access and Fairness, Gender Bias: Guidelines for Judicial OfficersAvoiding the Appearance of Bias (Aug. 1996) p. 15.) Similarly, retired Los Angeles Superior Court Judge David M. Rothman includes Judge Gordon's censure in his discussion of conduct manifesting gender bias. According to Judge Rothman, Judge Gordon exhibited such bias by maintaining a courtroom environment in which "offensive, crude and demeaning name-calling" was practiced, including by Judge Gordon. (Rothman, Cal. Judicial Conduct Handbook, supra, § 2.11, p. 51.) As those authorities recognize, there is cause to conclude Judge Gordon's inappropriate treatment of women constituted bias. By the same token, there is cause for a reasonable person to question whether Judge Gordon could serve as an impartial neutral arbitrator in this case.
(6) Haworth's suggestion that censure is solely intended to promote confidence in the judiciary also implies that censure cannot be referenced in assessing arbitrator impartiality. But that argument contradicts the repeated statements of the Legislature and the courts that neutral arbitrators must be held under the same standard of impartiality as the judiciary in order to promote public confidence in the arbitration system. As the court in Jevne v. Superior Court (2005) 35 Cal.4th 935, 948 [28 Cal.Rptr.3d 685, 111 P.3d 954] noted, the Legislature mandated creation of the ethics standards to ensure confidence in the integrity and fairness of the private arbitration system, a "`largely unregulated private justice industry'" in need of consumer protection measures. (Ibid., quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 475 (2001-2002 Reg. Sess.) as amended Aug. 20, 2001, p. 4.) *943 Similarly, in Azteca Construction, Inc. v. ADR Consulting, Inc. (2004) 121 Cal.App.4th 1156, 1165 [18 Cal.Rptr.3d 142], the court pointed out that because the merits of arbitration awards are essentially immune from judicial review, arbitrators enjoy "mighty and largely unchecked power." It stated that the rigorous ethical standards ordered by the Legislature were required to protect participants in the arbitration from that power, and to promote public confidence in the system. (Id. at pp. 1165 & fn. 7, 1167.) The ethics standards themselves state their purpose as "to guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Std. 1(a).) Toward the same end, the Code of Civil Procedure mandates that "all matters" that could reasonably raise a doubt as to arbitrator impartiality are to be disclosed. (§ 1281.9.) Contrary to Haworth's assertion, there is no basis for concluding that a judge's censure is immune from consideration.
Indeed, in the seminal decision of Commonwealth Corp. v. Casualty Co. (1968) 393 U.S. 145, 147-149 [21 L.Ed.2d 301, 89 S.Ct. 337], in which the United States Supreme Court found that private arbitrators must be held to standards of impartiality like those of judges, the court observed, "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." (Id. at p. 149.) The court went on: "We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (Ibid.)
(7) The court in Betz I, supra, 16 Cal.App.4th at pages 925-926 agreed and applied that reasoning to cases involving bias, emphasizing that "[a]ll litigants are entitled to a decision free from arbitrary considerations of race, gender, etc., and although arbitrators enjoy considerable latitude in the resolution of both factual and legal issues [citations], they are under the same duty as judicial officers to render decisions free from any influence or consideration of the race, ethnic origin or gender of the parties." Consequently, the court held, "with regard to claims of racial, [ethnic], religious or gender bias arbitrators should be held to the same standard pertaining to judicial officersthey should be disqualified if a person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial." (Id. at p. 926.) Because a person aware of Judge Gordon's censure might reasonably entertain a doubt as to his ability to be impartial in a case involving a woman's cosmetic surgery, it was necessary for him to disclose that censure before the matter proceeded to arbitration.
(8) In sum, the facts of this case are such that a reasonable person aware of the circumstances would harbor a doubt as to Judge Gordon's ability to be *944 impartial, and so disclosure was required. Accordingly, respondent court properly vacated the arbitration award at issue. (§ 1286.2, subd. (a).)

DISPOSITION
The petition for writ of mandate is denied. Real party in interest Susan Ossakow is awarded her costs in this proceeding.
Turner, P. J., concurred.
MOSK, J., Dissenting.
Vacating an arbitration award for nondisclosure by the chair of an arbitral panel in this case greatly increases the scope of the disclosures required of arbitrators by Code of Civil Procedure section 1281.9[1] and undermines the institution of arbitration. This is so because here the loser of a "binding" arbitration is able to nullify the result by ferreting out some fact about an arbitrator that a hypothetical "`average person on the street'"[2] might deem to indicate biaseven if that fact is entirely unrelated to the issue or parties before the arbitrator and was a matter of public knowledge before the arbitration began.
Worse, vacating the award based in part on section 170.1, subdivision (a)(6)(A)(iii), also significantly expands the circumstances in which California judges must be disqualified from hearing cases. To approve vacating the award in this case is therefore contrary to the California Supreme Court's mandate that section 170.1 is to be "`appl[ied] with restraint'" (People v. Chatman (2006) 38 Cal.4th 344, 363 [42 Cal.Rptr.3d 621, 133 P.3d 534] (Chatman)), and is unjustified by any articulated benefit to the administration of justice. I therefore dissent.

A. Standard of Review

The parties agreed the standard of review in this case is de novo. It has been said that an appellate court applies a substantial evidence test in reviewing the trial court's determination "`whether [an] arbitrator[] had a duty to disclose information ... [that] might indicate bias.'" (Guseinov v. Burns (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903]; see Reed v. Mutual Service Corp. (2003) 106 Cal.App.4th 1359, 1365 [131 Cal.Rptr.2d *945 524].) But that standard of review has never been approved by the California Supreme Court in a case such as this one, and I agree with the parties that it is the wrong standard to apply here.
The cases applying the substantial evidence test typically have involved the issue of whether an arbitrator's undisclosed current or former relationship with a party or party affiliate was so substantial that it would create an impression of bias. (See, e.g., Luce, Forward, Hamilton & Scripps, LLP v. Koch (2008) 162 Cal.App.4th 720, 726 [75 Cal.Rptr.3d 869] [arbitrator's prior service on board of professional association with counsel and expert witness for party]; Guseinov v. Burns, supra, 145 Cal.App.4th at p. 950 [arbitrator's prior service as pro bono mediator in matter involving party's law firm]; Fininen v. Barlow (2006) 142 Cal.App.4th 185, 188-189 [47 Cal.Rptr.3d 687] [arbitrator's prior service as mediator in matter involving party]; Michael v. Aetna Life & Casualty Ins. Co. (2001) 88 Cal.App.4th 925, 931 [106 Cal.Rptr.2d 240] [appraiser's firm had "prior and ongoing" business relationship with insurer]; Betz v. Pankow (1995) 31 Cal.App.4th 1503, 1507-1508 [38 Cal.Rptr.2d 107] [arbitrator's former law firm represented businesses owned by party]; Cobler v. Stanley, Barber, Southard, Brown & Associates (1990) 217 Cal.App.3d 518, 527 [265 Cal.Rptr. 868] [arbitrator's law partner represented party in unrelated litigation]; Figi v. New Hampshire Ins. Co. (1980) 108 Cal.App.3d 772, 775-776 [166 Cal.Rptr. 774] [neutral arbitrator's business relationship with party-selected arbitrator].) That is a qualitative assessment that is inherently factual. (See Lucent Technologies Inc. v. Tatung Co. (2d Cir. 2004) 379 F.3d 24, 31 [assessing whether arbitrator's prior relationships provide evidence of partiality requires "weighing all the various interests at stake"]; Gianelli Money Purchase v. ADM Investor Services (11th Cir. 1998) 146 F.3d 1309, 1313 [whether arbitrator's prior relationships establish reasonable impression of partiality "ordinarily requires a fact-intensive inquiry"].) In cases in which a determination of duty involves such fact intensive issues, such as the degree of a relationship and its connection to the case, a deferential standard of review is appropriate.
This case presents no such issues. The facts in this case are undisputed. The sole question in this case is whether those undisputed facts gave rise to a duty to disclosethat is, whether "[a] person aware of the [undisputed] facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii); see § 1281.9, subd. (a)(1).) In the context of judicial disqualification, this court has held that when the facts are not disputed, this is a question of law subject to de novo review. (Briggs v. Superior Court (2001) 87 Cal.App.4th 312, 319 [104 Cal.Rptr.2d 445]; Flier v. Superior Court (1994) 23 Cal.App.4th 165, 171 [28 Cal.Rptr.2d 383].) There is no reason why the rule should be different in the context of arbitrator disclosure. "If ... the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is *946 predominantly legal and its determination is reviewed independently." (Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) We generally review de novo the application of law to undisputed facts. (See, e.g., Connerly v. State Personnel Bd. (2006) 37 Cal.4th 1169, 1175-1176 [39 Cal.Rptr.3d 788, 129 P.3d 1]; Nicoll v. Rudnick (2008) 160 Cal.App.4th 550, 555-556 [72 Cal.Rptr.3d 879].) Issues of duty and objective reasonableness are also generally questions of law subject to de novo review. (See, e.g., Shin v. Ahn (2007) 42 Cal.4th 482, 488-489 [64 Cal.Rptr.3d 803, 165 P.3d 581] ["the existence and scope of a defendant's duty is a question [of law] for the court's resolution"]; Standard Fire Ins. Co. v. Spectrum Community Assn. (2006) 141 Cal.App.4th 1117, 1124 [46 Cal.Rptr.3d 804] [insurer's duty to defend is question of law when facts are undisputed]; City of Stockton v. Workers' Comp. Appeals Bd. (2006) 135 Cal.App.4th 1513, 1524 [38 Cal.Rptr.3d 474] ["whether the employee's belief was objectively reasonable... is a question of law that we determine independently"].) Consistent with these principles, a court recently applied a de novo standard of review to whether an arbitrator complied with his or her disclosure obligations under section 1281.9 in a case involving undisputed facts. (Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc. (2008) 162 Cal.App.4th 468, 476, fn. 7 [75 Cal.Rptr.3d 763]; see also Malek v. Blue Cross of California (2004) 121 Cal.App.4th 44, 55-56 [16 Cal.Rptr.3d 687] [reviewing de novo order vacating arbitration award; applied substantial evidence test only to review of disputed factual issues]; cf. SWAB Financial, LLC v. E*Trade Securities, LLC (2007) 150 Cal.App.4th 1181, 1196 [58 Cal.Rptr.3d 904]; id. at p. 1205 (cone. opn. of Mosk, J.).) Accordingly, the proper standard of review in this case is de novo.

B. The Trial Court Erred by Vacating the Arbitration Award

Section 1281.9, subdivision (a) requires a neutral arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge...." (§ 1281.9, subd. (a)(1).) Section 170.1 mandates that "[a] judge shall be disqualified if [¶] ... [¶] [f]or any reason: [¶] ... [¶] [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii); see also Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration, std. 7(d) [mandating disclosure of "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial"] (Standard 7).) An arbitrator's failure to disclose facts as required by section 1281.9 is a ground for vacating an arbitration award. (§ 1286.2, subd. (a)(2), (6); Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc., supra, 162 Cal.App.4th at *947 pp. 476-477; Michael v. Aetna Life & Casualty Ins. Co., supra, 88 Cal.App.4th at pp. 937-938.)
As can be seen, the relevant language in section 1281.9, subdivision (a)(1); section 170.1, subdivision (a)(6)(A)(iii); and Standard 7 is essentially identicala person aware of the facts might "reasonably entertain a doubt that the [proposed arbitrator or judge] would be able to be impartial." Accordingly, the same standard governs an arbitrator's duty of disclosure under section 1281.9 and a sitting judge's mandatory disqualification under section 170.1. This congruence is recognized by the court in its decision in this case. As I discuss below, it is worth bearing this in mind when considering the ramifications of the issue presented by this case.
The facts in this case are undisputed. Judge Norman Gordon was a judge of the Los Angeles Superior Court. In June 1996, the California Supreme Court adopted a recommendation of the Commission on Judicial Performance (Commission) that Judge Gordon be publicly censured after the Commission found that between April of 1990 and October 27, 1992, "Judge Gordon on several occasions made sexually suggestive remarks to and asked sexually explicit questions of female staff members; referred to a staff member using crude and demeaning names and descriptions and an ethnic slur; referred to a fellow jurist's physical attributes in a demeaning manner; and mailed a sexually suggestive postcard to a staff member addressed to her at the courthouse. None of the conduct occurred while court was in session or while the judge was on the bench conducting the business of the court." (In re Gordon (1996) 13 Cal.4th 472, 473-474 [53 Cal.Rptr.2d 788, 917 P.2d 627].) The Supreme Court stated, "While the actions were taken in an ostensibly joking manner and there was no evidence of intent to cause embarrassment or injury, or to coerce, to vent anger, or to inflict shame, the result was an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (Id. at p. 474.) Judge Gordon did not challenge the Commission's findings or recommendation. (Id. at p. 473.)
In July 2004more than eight years after Judge Gordon was censured and almost 12 years after the events that led to the censureplaintiff and real party in interest Susan Amy Ossakow filed this action alleging that defendant and petitioner Dr. Randal D. Haworth committed medical malpractice and battery while performing cosmetic surgery on Ms. Ossakow's face. The parties stipulated that, pursuant to their arbitration agreement, the matter would be submitted to binding arbitration. Each party selected one arbitrator; Judge Gordon was chosen by both parties to be the third arbitrator on a panel of three arbitrators. Judge Gordon did not disclose his 1996 censure. By a vote of 2-1, with Judge Gordon in the majority, the arbitration panel rendered an award in favor of Dr. Haworth and against Ms. Ossakow. Thereafter, *948 Ms. Ossakow "discovered" Judge Gordon's 1996 censure. She then moved the trial court to vacate the award. Ms. Ossakow claimed, according to the majority opinion, "that Judge Gordon's censure revealed his bias toward women based on their physical attributes . . . ."
The issue we must decide, therefore, is whether "a person aware of [Judge Gordon's censure might] reasonably entertain a doubt that [Judge Gordon] would be able to be impartial." (§ 1281.9, subd. (a)(1), italics added.) In other words, Judge Gordon's 1996 censure must (1) give rise to doubt about Judge Gordon's ability to be impartial in this case; and (2) such doubt must objectively be reasonable. In my view, the censure has no bearing on Judge Gordon's ability to be impartial in this medical malpractice case, and it is objectively unreasonable to infer from the 1996 censure, concerning events that occurred from 1992 to 1994, that years later Judge Gordon is biased against all women with unspecified physical attributes.
The starting point for analysis should be our Supreme Court's most recent application of the operative statutory language. In Chatman, supra, 38 Cal.4th 344, a capital defendant argued that the judge presiding over his trial should have been disqualified based on section 170.1, subdivision (a)(6)(A)(iii) and its requirement that a judge be disqualified if "`a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial....'" (Chatman, supra, 38 Cal.4th at p. 362.) The defendant in that case was charged with stabbing a woman 51 times during a robbery at a drive-up photo shop. (Id. at p. 353.) The trial judge disclosed to the parties that his daughter had been the victim of a robbery at knifepoint, in a photo shop, approximately 15 years earlier. (Id. at p. 361.) The defendant submitted evidence that, in the courtroom at the end of the penalty phase, the trial judge openly commiserated with the victim's father, saying that "`he (the Judge) knew it has been very hard.'" (Ibid.) The victim's father responded that the defendant "`took his [the father's] baby's life, and that his (the defendant's) life should be taken.'" (Ibid.) The defendant contended that a person aware of these facts could reasonably entertain a doubt regarding the trial judge's impartiality.
The Supreme Court rejected that argument. "Potential bias and prejudice," the court stated, "must clearly be established by an objective standard. [Citation.] `Courts must apply with restraint statutes authorizing disqualification of a judge due to bias.' [Citation.]" (Chatman, supra, 38 Cal.4th at p. 363.) Under this objective standard, the court held the defendant's contentions "`simply [did] not support a doubt regarding [the trial judge's] ability to remain impartial.' [Citation.] ... Judges, like all human beings, have widely varying experiences and backgrounds. Except perhaps in extreme circumstances, those not directly related to the case or the parties do not *949 disqualify them. In this case, the judge stated unequivocally that he made no connection between the earlier robbery [of his daughter] and the present case. `"[W]e of course presume the honesty and integrity of those serving as judges."' [Citation.]" (Id. at pp. 363-364, italics added, fn. omitted.)
To illustrate its point, the Supreme Court in Chatman, supra, 38 Cal.4th 344, cited Mann v. Thalacker (8th Cir. 2001) 246 F.3d 1092 (Mann). (Chatman, supra, 38 Cal.4th at p. 364 & fn. 11.) In Mann, a criminal defendant was convicted of abducting, sexually abusing, and attempting to murder a seven-year-old girl. The defendant waived his right to a jury trial, opting to try the case to the court. The defendant, however, did not know that the judge had been sexually abused in his early teens. (Mann, supra, 246 F.3d at pp. 1094-1095.) The Eighth Circuit rejected the defendant's argument that he was deprived of an impartial decision maker. Although the record "may [have] raise[d] doubts about whether the abuse [was] fully a `dead issue' for [the trial judge]," the court said, the defendant had failed to establish that the judge was not impartial. (Id. at p. 1097.) "[W]e think it is not generally true that a judge who was a victim of sexual abuse at some time in the remote past would therefore probably be unable to give a fair trial to anyone accused of a sex crime." (Ibid.)
In a civil context, in United Farm Workers of America v. Superior Court, supra, 170 Cal.App.3d 97, an employer sued a union for damages arising from a strike approximately six years earlier. (Id. at p. 100.) Nearly two months into a bench trial, the trial judge mentioned that his wife had worked for two or three days for the employer as a replacement worker during the strike. (Ibid.) The union moved to disqualify the trial judge pursuant to section 170.1, subdivision (a)(6)(c) [now subdivision (a)(6)(A)(iii)] on the ground that the judge's impartiality might reasonably be questioned because his wife had worked as a "strikebreaker." (Id. at p. 101.) The court noted that the union had failed to demonstrate "any current personal or financial interest which would disqualify [the trial judge]. Rather, [the union] must necessarily suggest that [the judge's wife's] willingness to work for two days during the strike [six years earlier] would cause a reasonable person to infer that [the trial judge] would either favor [the employer] or be biased against the union. This despite the fact there is no evidence that [the judge's wife] was in any way involved in any of the events at issue in the underlying lawsuit. We will not belabor the tenuousness of the proffered inference." (Id. at pp. 105-106, italics added, fn. omitted.) The court rejected the union's challenge to the trial judge. (Id. at p. 107.)
When compared to the three cases just discussedwhich apply the same standard to disqualification that we apply here to an arbitrator's duty to discloseit defies logic to conclude that the 1996 censure gives rise to an *950 objectively reasonable doubt that Judge Gordon could be impartial in this case. This is demonstrated simply by looking at the actual text of the censure. Judge Gordon was not censured for bias against a litigant, gender related or otherwise. In fact, Judge Gordon was not censured for any conduct "while court was in session or while [he] was on the bench conducting the business of the court." (In re Gordon, supra, 13 Cal.4th at p. 474.) He was censured for making sexually and ethnically inappropriate remarks that created "an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (Ibid.) As the Supreme Court stated, Judge Gordon's comments, though inappropriate, "were taken in an ostensibly joking manner and there was no evidence of intent to cause embarrassment or injury, or to coerce, to vent anger, or to inflict shame...." (Ibid., italics added.)
Judge Gordon was censured, in effect, for making comments that he intended to be humorous, but that were inappropriate in the workplace and disrespectful toward his staff. There is nothing in the Supreme Court's opinion that states or implies that Judge Gordon engaged in any misconduct or impropriety with respect to any litigant, male or female. There is certainly nothing in the Supreme Court's opinion that states or implies that Judge Gordon was (or is) such a staunch misogynist that he was (or is) incapable of impartial decisionmaking in any case involving a woman or her appearance.
The Supreme Court stated that Judge Gordon "made sexually suggestive remarks to and asked sexually explicit questions of female staff members," and "referred to a staff member using crude and demeaning names ... and an ethnic slur." (In re Gordon, supra, 13 Cal.4th at pp. 473-474.) Although these remarks and questions were inappropriate, there is no indication that they related to the staff members' appearance. The Supreme Court stated that Judge Gordon "referred to a fellow jurist's physical attributes in a demeaning manner." (Ibid.) There is no indication that the "physical attributes" to which Judge Gordon referred were particularly female attributes, or that the "physical attributes" were the same as or similar to those involved in this casethat is, Ms. Ossakow's "nose and its underlying musculature." The Supreme Court also stated that Judge Gordon sent "a sexually suggestive postcard to a staff member addressed to her at the courthouse." (Ibid.) There is no indication, however, that anything in the postcard involved the staff member's appearance. An inference from the Supreme Court's opinion that Judge Gordon harbored attitudes about the female appearance or about females in general such that he would be biased in this matter is not reasonable.
There are inevitable, but unintended, consequences of holding that Judge Gordon, as an arbitrator, had a duty to disclose the censurea duty based on the theory that a person reasonably could doubt his ability to be impartial in a *951 medical malpractice case involving facial cosmetic surgery on a woman because years earlier he made inappropriate sexual remarks to female members of the court staff. As explained above, the standards for arbitrator disclosure and judicial disqualification are the same. Thus, had this case been assigned to Judge Gordon while a sitting superior court judge, real party in interest's position would require Judge Gordon to disqualify himself under section 170.1, subdivision (a)(6)(A)(iii). Under this holding, had Judge Gordon remained on the superior court, he would have been required to disqualify himself in a substantial number of cases regardless of who the litigants were, including (1) any case involving a female plaintiff complaining of medical malpractice involving any portion of the female anatomy; (2) any case involving sexual harassment in the workplace; (3) any civil or criminal case involving stalking or unwanted sexual contact with a female; and perhaps (4) any family law matter involving a dispute between a man and a woman.
Further, without stretching this logic too far, one also could reasonably doubt Judge Gordon's ability to be impartial in any case involving a female litigant. If, as the court holds, Judge Gordon has a propensity to make judgments about women based on their appearance, one might reasonably conclude that he would be biased in any case involving a woman. Inexorably, one would be compelled to go one small step further, and conclude that Judge Gordon would be required to disqualify himself in any case involving a woman as a material witness.
Lest one think this an exaggeration, the extent of the disclosure advocated by real party in interest is manifested in a colloquy at oral argument. Counsel for real party in interest was asked to assume that the partner in the law firm that offered then recent Stanford Law School honors graduate [later United States Supreme Court Justice] Sandra Day O'Connor a secretarial position had a policy [the firm's policy at that time] of hiring women as secretaries rather than as lawyers. (Bales, In Honor of Sandra Day O'Connor (2006) 58 Stan. L.Rev. 1705, 1706.) Counsel was asked, in effect, whether that partner would have to disclose that fact 10 or 20 years later, if asked to serve as a neutral arbitrator in a case such as this one. Counsel for real party in interest replied in the affirmative.
The consequences of the trial court's ruling as a precedent go even further. The Supreme Court noted in Judge Gordon's censure that he "referred to a staff member using crude and demeaning names ... and an ethnic slur" (In re Gordon, supra, 13 Cal.4th at p. 474, italics added) and created "an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (Ibid., italics added.) As a result, following the logic of the disclosure requirement, one would be compelled to *952 conclude that a person aware of the censure could reasonably doubt Judge Gordon's ability to be impartial in any case involving a litigant or material witness of any ethnicity or race different than Judge Gordon's. Accordingly, had Judge Gordon remained on the Los Angeles Superior Court bench, he would have been forced to disqualify himself in a vast number of cases.
Significantly, the fact that Judge Gordon was censured was not a basis for the vacation of the award and says nothing about Judge Gordon's ability to be impartial in any particular case. (See Remmey v. PaineWebber, Inc. (4th Cir. 1994) 32 F.3d 143, 148 [undisclosed prior National Association of Securities Dealers (NASD) discipline of arbitrator irrelevant to arbitrator's ability to be impartial in unrelated NASD case].) Rather, the vacation of the award is grounded on the basis for the censure.[3] In other words, it is the fact that Judge Gordon made statements denigrating females based on their appearance years earlier that gives rise to a reasonable doubt about his ability to be impartial, years later, in this case involving a female who, certainly, has an appearance. Restated as a general proposition, the real party in interest's position might be articulated as follows: If one has ever made statements that reasonably imply bias in favor of or against an identifiable group, such statements give rise to a perpetual duty to disclose on the part of an arbitrator (§ 1281.9, subd. (a)(1)) and to perpetual mandatory disqualification for a sitting judge (§ 170.1, subd. (a)(6)(A)(iii)).
But why stop at statements? It is well settled that one's conductsuch as the jobs one holds, the organizations to which one belongs, the books one reads, the Web sites one visits, and the clothes one wearscan effectively reflect one's point of view.
I do not quarrel with the disclosure requirements of section 1281.9 or the proposition that parties to arbitration proceedings have as great an interest in having an impartial decision maker as do litigants before the courts. I believe, however, that a rule of law that excuses parties to arbitration proceedings from exercising due diligence in choosing an arbitrator, and that encourages parties to arbitration proceedings to conduct intrusive investigations into an arbitrator's background in a post hoc attempt to overturn an adverse arbitration award, is fundamentally unsound. This has been recognized by the federal courts and academic commentators alike. (See, e.g., Lucent Technologies, Inc. v. Tatung Co., supra, 379 F.3d at p. 29 [rejecting rule that "`would "encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators ..."' ... in hopes of finding a `pretext for invalidating the award'"] [citations omitted]; Remmey v. PaineWebber, Inc., supra, 32 F.3d at p. 148 [postarbitration claim that *953 arbitrator had failed to disclose publicly available information rejected as "the ultimate attempt at a second bite. If this challenge were sustained, nothing would stop future parties to arbitration from obtaining allegedly disqualifying information, going through with the proceedings, and then coming forward with the information only if disappointed by the decision"]; Menkel-Meadow, Ethics Issues in Arbitration and Related Dispute Resolution Processes: What's Happening and What's Not (2002) 56 U. Miami L.Rev. 949, 961 ["conflicts of interest are increasingly raised after the fact when the losing party challenges the arbitral award"]; Note, The Impression of Possible Bias: What a Neutral Arbitrator Must Disclose in California (1993) 45 Hastings L.J. 113, 116 ["parties will be tempted to seek vacation of unfavorable arbitration awards in every instance by attempting to capitalize on a vague and inherently manipulable standard"].) Ironically, the reduction of the burden on parties to investigate arbitrators before an arbitration[4] and a holding that potential bias can be shown by facts having no connection to either the issues or the parties before the arbitrator, will encourage losing parties to scour an arbitrator's personal and professional life for any facthowever privatethat might form the basis for a nonfrivolous motion to vacate. It can be expected that parties in a high-stakes arbitration will go to great lengths to obtain such relief. Even if the losing party does not expect to prevail, he, she or it will gain some leverage in settlement discussions. Unfortunately, it will be the arbitrators and the institution of arbitration that pay the price.
The dissenting opinion in O'Flaherty v. Belgum (2004) 115 Cal.App.4th 1044, 1064 [9 Cal.Rptr.3d 286], illustrates the types of challenges that losing parties in arbitrations make regarding alleged nondisclosure. In that case, involving a dispute among former partners of a law firm, the losing party in an arbitration challenged the award, inter alia, on the basis that the arbitrator had not disclosed such things as his prior separation from a law firm. The majority concluded that the award should be vacated, but for reasons unrelated to any lack of disclosure. The dissenting justice reached the disclosure issue not decided by the majority and said, "the facts of the arbitrator's separation against [his former law firm], ... are not similar to the *954 instant case beyond the bare fact that both involved the decisions of partners in a law firm. In addition, the arbitrator's separation against [the former law firm] occurred more than 10 years prior to the arbitration proceedings in this matter." (Id. at p. 1106 (dis. opn. of Grignon, J.).) As done in that case, every losing party, in order to try to vacate the award, will do the equivalent of a full-field security investigation of the arbitrators to try to unearth something that it will claim should have been disclosed. In fact, an unscrupulous party can investigate the arbitrator prior to the appointment and hold information in reserve to use in case the arbitration is lost.
This case does not present the sort of "extreme circumstances" referred to by the Supreme Court in Chatman, supra, 38 Cal.4th at page 364, to justify imposing a duty to disclose or mandatory disqualification based on a fact that is unrelated to the case or parties before the arbitrator. Manifestly, to vacate the award in this case does not apply sections 170.1 and 1281.9 "`with restraint.'" (Id. at p. 363.) I would issue a peremptory writ instructing the trial court to reinstate the arbitration award. I therefore dissent.
NOTES
[1] Judge Gordon "made sexually suggestive remarks to and asked sexually explicit questions of female staff members; referred to a staff member using crude and demeaning names and descriptions and an ethnic slur; referred to a fellow jurist's physical attributes in a demeaning manner; and mailed a sexually suggestive postcard to a staff member addressed to her at the courthouse." (In re Gordon (1996) 13 Cal.4th 472, 473-474 [53 Cal.Rptr.2d 788, 917 P.2d 627].)
[2] Ossakow also moved to vacate the award for Judge Gordon's refusal to allow some witness testimony, but that issue is not before us.
[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
[4] Ossakow requests that this court take judicial notice of the California State Bar's Web site entry for Judge Gordon, which does not mention his censure, presumably to show that Judge Gordon's censure is not readily discovered. The request is denied.
[1] All statutory references are to the Code of Civil Procedure.
[2] United Farm Workers of America v. Superior Court (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4] (a case of judicial disqualification, in which disqualification was denied), quoting from Potashnick v. Port City Const. Co. (5th Cir. 1980) 609 F.2d 1101, 1111 ("a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street"). How one would determine or identify such a person referred to by the majority has not been disclosed.
[3] The result would be the same had Judge Gordon's censure been private. The decision's logic would seem to require disclosure in that case as well.
[4] I do not think it is difficult to type the words "judge norman gordon" into Google and push the search key. The first result Google displays is a "Zoominfo" profile of Judge Gordon that provides two separate entries relating to the 1996 censure, ( [as of July 10, 2008].) The second Google result is a link to the text of the Supreme Court's opinion in the censure matter on a State of California Web site, ( [as of May 15, 2008].) I would think it preferable to require counsel to type three words into Google rather than force the parties to endure the time and expense of a pointless arbitration proceeding, a motion to vacate the arbitration award in the trial court, a writ proceeding in this court, review before the California Supreme Court, perhaps further proceedings in the California Supreme Court, remand to the trial court, and then another arbitration proceeding, and whatever happens thereafter.